## PORTER *against* ANDREWS.

A seaman    IN ERROR, from the justice's court of the city of *New-York*.
signed articles
for a voyage *Andrews* brought an action in the court below, against *Porter*,
from  *New-*
*York to North* master of the ship *Eliza Ann*, for his services as a seaman, on
*Carolina*, and a voyage from *New-York* to *North Carolina*, and from thence to
thence to a
port in *Eu-*
*rope*. The vessel went from *New-York* to *North Carolina* in ballast, and there took in a cargo,
and sailed for *Europe ;* but was compelled, in consequence of springing a leak, to put into *New-*
*York* for repairs.

The seamen made no application for repairs, under the law of the *United States ;* but the own-
ers voluntarily caused repairs to be made; and the vessel after the repairs, was, in the opinion of
the *master carpenter*, and three shipbuilders, perfectly seaworthy ; though *seven* journeymen
carpenters were of opinion that she was not seaworthy; and on that ground the crew refused to
proceed on the voyage. No *freight* was earned, the cargo having been landed, only for the pur-
pose of repairs, and was reladen after they were completed. An action was brought by one of the
seamen, who refused to proceed, to recover his wages, to the time.

It was held, that he was not entitled to recover, there being no freight earned, nor any loss of
voyage imputable to the master or owners.

*New-York.* It was proved that the plaintiff below signed arti-

cles in the usual form, for a voyage on board of that ship, "from *New-York* to *North Carolina,* and from thence to one or more ports in *Europe,* and back to her port of discharge in the *United States."* The plaintiff shipped the 18th *August,* 1811, at 17 dollars per month. The ship proceeded on her voyage, in ballast, and discharged her ballast in *Wallace's Channel,* in *North Carolina,* and there took in a cargo and cleared out for *Gibraltar.* After being at sea and during the prosecution of her voyage, she was found to make so much water, that it was thought necessary to put into *New-York* to refit. On her arrival, the owner voluntarily proceeded to repair the ship, without any application of the seamen, for that purpose, under the act of congress. On examination it appeared that the timbers of the ship were sound, and that the leak was occasioned by the planks in her bottom being eaten by worms, while she was in *North Carolina.* Seven *journeymen* shipcarpenters, who were employed in repairing her, testified, that, in their opinion, she was not so repaired as to be seaworthy, though she might have been made so; that the larboard side was sufficiently repaired, and had the starboard side been repaired in the same manner, she would have been seaworthy. The owners refused to make any further repairs, and loaded her for sea. The plaintiff below, and the rest of the crew, refused to proceed to sea in the ship, on the ground that she was not seaworthy. The *master* shipcarpenter, under whose direction the repairs were made, and three shipbuilders, who were called to survey the ship, were of opinion that the ship was perfectly seaworthy.

It appeared that no *freight* had been earned by the ship, she having landed her cargo in order to be repaired; and the cargo was reladen and carried to her port of destination.

The court below being of opinion that the vessel was not seaworthy, and that the plaintiff was not bound to proceed to sea in her, gave judgment in his favour, for 87 dollars, being the amount due to him.

The case was submitted to the court without argument.

*Per Curiam.* There was contradictory evidence as to the seaworthiness of the ship, after the owners had repaired her, and the court below concluded that she was not seaworthy, and allowed the seamen their ratable wages. It does not appear, but that the ship was seaworthy when she sailed from *New-York;* and as she lay several months in *North Carolina,* and no leakage appeared

NEW YORK, on the voyage there, the presumption is that the injury by worms
Oct. 1812. arose while she lay in the river at *North Carolina.* The question,
PHINNEY then, is, whether wages are recoverable in this case, when no
v. *freight* was earned; and when, in the opinion of the master carpen-
EARLE. ter, employed to repair the ship, she was sufficiently repaired
for the voyage. The act of congress (*Laws of U. S.* vol. 1.
135.) had provided a competent tribunal to settle such questions,
by enabling the mate and a majority of the crew to cause applica-
tion to be made to the district judge, who would have directed an
examination to be had, and have eventually determined upon the
duty of the seamen. There is no case to be found, which allows
wages when no freight is earned, and when the loss of the voy-
age is not to be imputed to the default of the master or owner.
In this case, the crew neglected to apply, under the act of congress,
for the requisite repairs, but submitted to have them made under
the direction of the owners, who conformed to the judgment of the
master shipcarpenter; and that must be deemed sufficient (even
admitting a want of seaworthiness to justify a demand for wages)
to excuse the owner from the payment of wages, if the crew, af-
terwards, refused to abide by the judgment of the master ship-
carpenter, and to perform the voyage. They cannot be per-
mitted, in a case free from any suspicion of fraud, to set up the
opinion of journeymen workmen, not only to excuse their breach
of contract, but to justify their demand for wages. Such a practice,
if tolerated, would be extremely prejudicial to the merchants' ser-
vice.

Judgment reversed.