Curia, per Sutherland, J.
No general principle of commercial law is better settled, than that no Wages are allowed to seamen where no freight is earned; unless the- loss of the voyage and freight is to be imputed to the default of the master or owners. It- has accordingly grown into á legal maxim, that freight is the mother of wages. (Abbott on Ship. pt. 4, ch. 3, and cases there collected, 3 John. 154, 11 John. 279. Whetmore v. Henshaw, 12 John. 324.) In the- last case, this question is elaborately discussed by the Counsel and by the judge, who delivered the opinion of the court. See also 9 John. 350; 1 Peters, Adm. Rep. 142; 2 id. 264 ; 10 Mass. Rep. *143.) The rule is founded on considerations of policy, growing out of the peculiar nature of the service-; and is intended to give to seamen the strongest inducements to exert themselves to the utmost, for the safety and preservation of the ship. (1 Sid. Rep. 179.)
The rule being admitted, the question in this case is, *175 whether the loss of the return voyage, and consequently of the freight, was owing to the default or misconduct of the owners or master of the vessel.
The vessel, after the discharge of her cargo at Newry, was regularly libelled in the Irish admiralty court, in March, 1824, by one Forrest, who claimed to be the owner; and the captain and crew were turned ashore by the proctor of the court. The captain provided for the crew until the 27th of April, when he paid them their wages to that time, and discharged them. The vessel was detained in the custody of the admiralty until October, 1825, when, by the decree of that court, she was ordered to be restored to the captain and owners; which was prevented by a mob, and the captain was killed in the affray. The vessel had then deteriorated so much as not to be worth repairing. The owners abandoned to the underwriters; the vessel was sold in Ireland, and never returned to this country. The voyage of course was broken up, and no return freight earned.
In Woolf and others v. Brig Oder, (2 Peters’ Adm. Rep. 261,) the vessel was seized in a foreign port for the debt of the owner; and the seamen were discharged. They were held to be entitled to their wages. This was, doubtless, on the well settled ground, that the seizure was attributable to the fault of the owner. (2 Bro. Adm. 182. Vin. Abr. Mariners, (E.) pl. 7. Mai. Lex Merc. 105, c. 23. Mol. B. 2. ch. 3, $ 7.) So in Hoyt v. Wildfire. (3 John. 520,) the seamen were shipped, ona voyage from New York to Bombay. The master deviated from his course, and sailed towards the Isle of France, under pretence of being in want of water ; and while thus sailing, was captured by an English frigate, and the vessel and cargo were condemned. It appeared that the want of water was a mere pretence; and the court say, “the act of the master, in sailing to the Isle of France, with articles *contraband of war, under pretence of a want of water, was a fraudulent act; and from the testimony in the case, there is every reason to conclude, that this was the original destination of the ship, known to the owner, though concealed from the seamen. The contract entered into with the seamen was not *176 kept with good faith. A deceit was practised upon them. The ship and freight were justly lost by a wilful violation of neutral duty, and the seamen had the soundest claim upon the owner for an equitable compensation.” And the general rule is there repeated, that if freight be lost during the course of the voyage, by a disaster or peril, arising from accident or superior force, the seamen lose their wages; büt, if the freight be lost by the fraud or other wrongful act of the master, the reason of the rule does not apply. It is not sufficient that the freight be lost without the fault of the seamen. The capture or wreck of the vessel may be without their fault. It must be owing to the fraud, or other wrongful act of the master or owner, or else the1 loss of the freight carries with it the loss of the seamen’s wages.
The issue of the proceedings in the Irish admiralty court shows that the claim which was preferred against the defendant’s vessel, and which caused the breaking up of the voyage, was without foundation. What color there was for it, we have no means of judging, as the result only of the proceedings is stated in this case.
But I am inclined to think, that civil process, issuing at the instance of an. individual, for the purpose of trying a private right of property, is not that species of superior force which will exempt the owners of a vessel from the payment of seamen’s wages, although it may break up the voyage, and prevent the earning of freight. It does not seem to fall within the policy of the rule. (Vid. 1 Sid. Rep. 179.) Every individual is supposed to know his own title to the property in his possession; and to be capable of taking the legal precautions necessary to prevent that possession from being interrupted ; and the law is supposed to award an adequate compensation for the damage which may result from án unfoundéd prosecution, in the costs , and indeed express compensation *for loss of freight might be given in this instance to the successful party. (Vid. 3 Mason’s Rep. 165, 6.) Besides, there is hardly any civil proceeding, which necessarily changes the possession of the property, thé title to which is to be tried, until the final *177 termination of the suit. In proceedings in rem, to enforce a claim of the alleged owner, the defendant can probably retain the possession of the vessel, or other property libel-led, or, at least have it restored, when the preservation of the property requires it, on giving competent security to return it, if finally condemned. The owners of the vesse in question, or the master, might probably,- on showing proper cause, and on giving security according to the course of the court, by deposit or otherwise, have retained, or been restored to the possession of the vessel, although libelled, and have prosecuted their voyage without any essential interruption. (Clerke’s Adm. Practice, tit. 41, 43.) It is no answer to this argument to say, that it was not, or may not have been in their power to obtain the requisite security in a foreign land. It is the duty of owners to furnish the masters of their vessels with the means of obtaining all the credit which the exigencies of the voyage may require. But independently of this consideration, the being subject to unfounded claims and lawsuits is a contingency, the peril and consequences of which, I think, ought to fall exclusively upon the owners. It is a matter of mere private concern, the damages or probability of which, the seamen have no means of calculating, and cannot, by any effort or exertions on their part, avert. But the perils of the seas, and the danger of capture, they can in some degree estimate, from knowing the destination of the vessel, the length of the voyage, the cargo on board, and the pacific or belligerent state of the maritime powers ; and they-can not only estimate the danger, and therefore exercise a discretion as to the voyages in which they will embark, but they have in their own skill, enterprise and courage, the means of diminishing, if not entirely averting it. These considerations appear to me to constitute a marked distinction between the two classes of cases.
*In Eaken v. Thom, (5 Esp. Rep. 4,) the voyage was broken up in its progress by the vessel being unseaworthy, without any imputed fault of the owner; and Lord Ellen-borough held, that though the mate could not recover his wages, eo nomine, yet, he might recover damages, in an *178 action on the case. The suit before us was so shaped, as to cover not only a claim for wages as such, but damages for omitting to furnish a seaworthy ship, and discharging the plaintiff below, in a foreign land. The amount in either view, was admitted by the parties to he the same.
The plaintiff below, therefore, was entitled to wages, or, perhaps more properly speaking in this case, damages to the amount of his wages for the return voyage.
The plaintiff below could not sustain his suit under the act of congress of February 28th, 1803, (Ingersoll’s Dig. 146.) The case of Ogden v. Orr, (11 John. 143,) is decisive upon this point.
Judgment affirmed.