Peck *v.* Hiler.

---

---

⬩

---

## PECK *vs.* HILER.

An interruption of the enjoyment of a privilege conferred by a lease, by physical means adopted *by the landlord*, constitutes an eviction, and suspends the rent of the demised premises, and the remedy of the lessor, for the recovery of the possession.

Accordingly, where the use of a rail road, together with a rolling mill, furnace, &c., was leased to the defendant; such use being necessary to the full enjoyment of the premises; and rent was to be paid for such rail road, as an appurtenance of the other demised premises; and after the defendant had taken possession thereof, the lessor tore up the rails of the rail road, *it was held* that this amounted to an eviction of the tenant, which barred an action for the recovery of the possession of the premises on the ground of non-payment of rent.

*Held also*, that the fact of the tenant having recovered damages of the lessor, for the breach of the covenant for the use of the rail road, did not alter the case; the covenant being a continuing covenant.

*Held further*, that it being obvious, from the construction of the whole lease, according to its true meaning, that the use of the rail road was intended to be secured to the lessee, during the term, as a part of the demised premises, the fact that such use was granted in the form of a *covenant*, and separate from the formal demise, did not exclude the enjoyment of the rail road from forming a part of the demise.

THIS action was brought for the recovery of the possession of certain premises in Rockland county, which were demised to the defendant by the plaintiff.  The complaint averred that rent for more than half a year was due and unpaid; that payment was demanded and refused, and that the plaintiff gave notice of his intention to re-enter within fifteen days, on ac-

Peck *v.* Hiler.

count of the non-payment of said rent. The answer averred that the use of a certain rail road was demised as part of the demised premises, and that after the defendant had taken possession of the premises, the plaintiff evicted him from the use of the rail road and still held him evicted. The cause was tried before Justice BROWN, without a jury, in November, 1854, who rendered judgment in favor of the plaintiff. From this judgment the defendant appealed to the general term. The cause was argued in April, and was decided at the October term, before BROWN, P. J., STRONG and EMOTT, Js., when the judgment of the special term was reversed, and the following opinion was delivered.

"*By the Court*, EMOTT, J. This action is for the possession of certain demised premises, alleged by the plaintiff to have been forfeited by the non-payment of rent. The defense is, that the rent was suspended by the eviction of the tenant from a portion of the premises ; and if this partial eviction be established, there is no doubt that the entire liability of the tenant for rent ceases until the interference of the landlord with the use of the property is terminated. The alleged eviction in this case consisted in the tearing up and removal of the rails upon a rail road running to the Hudson river, from the demised premises, which were a rolling mill and iron works in Rockland county.

The fact of the removal of the rails by the plaintiff is admitted, but two questions are raised : First, whether the use of the rail road was part of the demise; and, second, if it were, whether the tearing up of the rails constituted an eviction.

The use of this rail road is granted in the form of a covenant in the lease, and separately from the formal demise, it is true ; but this does not exclude the enjoyment of this structure from forming a part of the demise. The instrument must be construed according to its true meaning, and not by strict technical rules, and it is sufficiently obvious that this interest in the rail road in question, or its use, was intended to be let and secured to the lessee during the term. It is granted in express, though

perhaps not formal, terms, to the tenant, as part of his lease; and though perhaps if it be considered as an incorporeal hereditament, a suit could not in strictness be said to issue out of it alone, yet when such an interest is demised with lands and a rent reserved, it is held to issue out of both in point of render, although out of the corporeal hereditament alone in point of remedy. So that where rent is nominally reserved out of two things, the one corporeal and the other incorporeal, and not apportioned, and the demise of the incorporeal hereditament is insufficient or invalid in form or substance, no rent at all is recoverable. (*See* 2 *Saund.* 303 ; 2 *B. & A.* 336 ; 2 *A. & E.* 696 ; 7 *Exch.* 685.)

In the case of *Watts* v. *Coffin*, (11 *John.* 495,) the court held that the covenant of the lessor, that the lessee should have common of estovers and common of pasture in part of the Rensselaer manor, to which the demised premises belonged, did not make these privileges part of the grant, or of the demised premises, out of which rent was reserved, but that they lay in covenant. But this was founded upon two sufficient reasons peculiar to that case, and which do not exist here. By the terms of the lease, in *Watts* v. *Coffin*, the rent was reserved expressly out of the lands. granted, and was the yearly tenth of their produce, showing that these rights of common formed no portion of the premises out of which the rent was reserved to issue. And the court also advert to the fact, that the common mentioned in the covenant is appurtenant only, and capable of being created by grant as a separate interest or right, and not appendant to the estate created by the deed, which was a fee. Upon these arguments, applied to the construction of the conveyance, the court held that these rights of common formed no part of the grant. In *Etheridge* v. *Osborn*, (12 *Wend.* 529,) the lease contained a covenant that the landlord would dig and complete a raceway across the demised lands, to contain a given quantity of water, which the tenant was to be allowed to use. The defense was, that the raceway had never been built, and thus the tenant had lost its benefits. The court held, that as the tenant went into possession without and before the construc-

tion of this raceway, the landlord could not be said to have evicted the tenant from what had never existed, and the tenant must sue for damages, on his covenant. But it was admitted, that if the landlord, after the raceway had been dug and water let in, had diverted the water, it would have amounted to an eviction. The use of the race, and the water flowing in it, when made, was an essential part of the premises, and necessary to their full enjoyment. In *Tomlinson* v. *Day*, (2 *Brod. & Bing.* 680, the landlord stipulated that the tenant of a certain farm leased at a rent of £450, should enjoy a right of sporting over a manor, and it appearing that the landlord had no right to grant the privilege of sporting, it was held, that the right to shoot game formed part of the demise, and entered into the consideration for which the tenant became bound to pay rent, and that the fact that no such right passed, and the tenant was warned off, constituted an eviction.

In this case the use of the rail road in question unquestionably formed part of the inducement and consideration for which the defendant agreed to pay the stipulated rent, and was necessary to the full enjoyment of the premises as leased. How far the tenant considered this use of the railway in the bargain, or how important it was to the full and profitable use of the property in the business for which it was intended, is not material. It is enough that the court can see that it formed part of the premises and privileges which the tenant was to occupy and enjoy, that it was part of the estate granted, and intimately connected with the use of the land and buildings.

The next question is, whether the facts shown and admitted constitute in law a partial eviction, assuming this railway to have been part of the demise. Here I am constrained to differ with the learned judge who tried the cause. While upon the principles on which he places his decision, derived from the old precedents of pleading, it may be difficult to escape the force of his reasoning, yet these rules, and this construction of the pleas, has been expressly overruled and set aside by the more recent cases, and especially in the case of *Dyett* v. *Pendleton*, in the court of errors, (8 *Cowen*, 727.) It is no longer neces-

Peck *v.* Hiler.

sary that there should be a manual or physical expulsion or exclusion from the premises, or any part of them, to constitute an eviction. Any intentional and injurious interference by the landlord, which deprives the tenant of the means or the power of beneficial enjoyment of any part of the demised premises is an eviction, under the authority of the cases in this state. The opinion of Chief Justice Nelson, in *Ogilvie* v. *Hull,* (5 *Hill,* 52,) which was cited to limit the application of the case of *Dyett* v. *Pendleton,* expressly recognizes this principle. And in *Cohen* v. *Dupont,* (1 *Sand. S. C. R.* 260,) the superior court of New York laid down and applied the same rule. The considerations derived from the forms and rules of pleading, by the learned judge who delivered the opinion in this case, were adverted to in the court of errors, in the case of *Dyett* v. *Pendleton,* and were not admitted to be sufficient to control the decision of the question. These cases, and the reasoning they contain, are, I think, decisive to show that the removal of the rails was an eviction of a portion of the premises demised in this case. It is well settled that an eviction, as to part of the demise, suspends the rent of the whole. (*See Lawrence* v. *French,* 25 *Wend.* 443.) And therefore the defendant here was not, at the time of bringing this action, under the obligation to pay the rent fixed by this lease, and it did not become forfeited by his failure.

The judgment should be reversed, and a new trial ordered, with costs to abide the event."

On the 14th of November, 1856, an order was made in accordance with this opinion, directing a re-argument to be had, and the cause now came up pursuant to that order.

*G. W. Stevens,* for the appellant. I. In construing a deed or other written instrument, the intention of the parties must be gathered from the whole instrument, and that intention must govern in its construction. (*Stratton* v. *Pettit,* 30 *Eng. Law and Eq. Rep.* 479. *Oakley* v. *Adamson,* 8 *Bing.* 356.)

II. It was the intention of the parties, as it is to be gathered

from the lease, that the use of the rail road should pass to the defendant, equally with the use of the rolling mill.

III. The rail road passed to the plaintiff, under the lease, as an appurtenance to the principal matter demised, viz: the rolling mill. (2 *Crabb on Real Property*, 246, 247. *Pekes* v. *Grubb*, 21 *Penn. R.* [9 *Harris*,] 455. *Barlow* v. *Rhodes*, 1 *Cromp. & Mees.* 439.)

IV. The use of the rail road is specifically demised to the defendant, in and by the lease, and is coupled with, and forms part of, the demised premises. (*Woodf. Land. and Tenant*, 6, 147. *Taylor's Land. and Ten.* 10. 1 *Platt on Leases*, 24. 2 *id.* 23. *Anon.* 11 *Mod.* 42. *Newcomb* v. *Ketteltas*, 19 *Barb.* 608. *Doe dem. Smith* v. *Galloway*, 5 *Barn. & Ad.* 43. *Moore* v. *Miller*, 8 *Barr*, 272.)

V. The tearing up of the rails, as admitted by the stipulation, was an actual and not a mere constructive eviction of the defendant from the beneficial enjoyment of the rail road, expressly demised to him by the lease. (*Tomlinson* v. *Day*, 2 *Brod. & Bing.* 680. *Etheridge* v. *Osborn*, 12 *Wend.* 529. *Cohen* v. *Dupont*, 1 *Sand. S. C. R.* 260. *Upton* v. *Towsend*, *Upton* v. *Greenlees*, 33 *Eng. L. and Eq. Rep.* 212. *Briggs* v. *Hall*, 4 *Leigh*, 484.)

VI. An eviction of the tenant by the landlord, from a part of the demised premises, suspends the whole rent so long as the eviction shall continue. (1 *Roll. Abr.* 940, *n.* *Dyett* v. *Pendleton*, 8 *Cowen*, 727. *Lewis* v. *Payn*, 4 *Wend.* 423. *Lawrence* v. *French*, 25 *id.* 443. *Christopher* v. *Austin*, 1 *Kernan*, 216.)

VII. The recovery in the suit by the defendant against the plaintiff set up in the reply, is not à restoration of the possession of the road to the defendant, and cannot operate as a revival of the rent. (3 *Black. Com.* 220. 2 *Leon. pl.* 129. *Cro. Eliz.* 402. *Johnson* v. *Long*, 1 *Ld. Raym.* 370. *Fisher* v. *Barret*, 4 *Cush.* 381.)

*Ferris & Frost*, for the respondent. I. The rail road in question was no part of the thing demised, or with reference to

which any rent was reserved. The right to the use of this rail road rested upon a simple covenant totally disconnected with the general demise, and if the lessor had entirely deprived the lessee of the use of the rail road, it would not have amounted to an eviction, so as to have suspended the rent. (8 *Bac. Ab. tit. Rent, B, p.* 454, *id. D. p.* 462. *Watts* v. *Coffin,* 11 *John.* 495. *Fitchburg Manuf. Co.* v, *Melvin,* 5 *Mass. R.* 270, *note. Comyn's Land. and Ten. by Chilton,* 525. 3 *Kent's Com.* 460. *Winslow* v. *Henry,* 5 *Hill,* 481. *Capell* v. *Buzzard,* 3 *Yo. & Jervis,* 344. *Taylor's Land. and Ten.* 92. *Comyn's Dig. tit. Rent, B.* 3. 18 *Viner's Abr.* 472, 491, 492. *Mason* v. *Chambers, Cro. Jac.* 34.)

II. If the rail road in question had been a part of the thing demised, the act admitted to have been done by the lessor would not constitute an eviction ; the admission being simply that the plaintiff directed the tearing up of the rails from the rail road mentioned in the pleadings in this action, in the month of April, 1853. (*Hunt* v. *Cope, Cowp.* 442. *Woodf. Land. and Ten.* 413. 1 *Saund. R.* 204, *n.* 2. *Lawrence* v. *French,* 25 *Wend.* 443. *Ogilvie* v. *Hull,* 5 *Hill,* 52. 3 *Kent,* 464. *Taylor's Land. and Ten.* 255. *McFadden* v. *Rippey,* 8 *Missouri R.* 738. *Roper* v. *Lloyd, T. Jones,* 148. *Harrison's case, Clayton's R.* 34. 18 *Viner's Ab. tit. Rent,* (*A a,*) *pl.* 11. *Chambers' Land. and Ten.* 591, *Bennett* v. *Bittle,* 4 *Rawle,* 343, 4.)

III. The occupation of the premises and the payment of rent accruing after the tearing up of the rails, with the knowledge by the lessee at the time of such payment that the rails had been so torn up, are acts entirely inconsistent with the defense set up. (*Crane* v. *Dresser,* 2 *Sand.* 120. 3 *Kel. R. p.* 520, *pl.* 87.)

IV. The lessee having brought an action upon the covenant in question, and recovered damages from the lessor for the tearing up of the rails in question, and a judgment thereon having been entered and paid, he cannot avail himself of the same acts to defeat the present action.

V. The putting the rail road in repair, above the Chemical Works, by the lessee, was a condition precedent to his right to

Peck *v.* Hiler.

use it. The lessor reserved to himself important privileges in the mill in question, and it was for his interest that the rail road should be repaired, which fact together with the benefit which would accrue to him as the owner of the road, furnishes the consideration for granting to the lessee the use of the rail road.

S. B. Strong, P. J. I assented to a re-argument of this case, as my associates had differed from each other, and from a supposition that I might have misinterpreted the authorities cited by Judge Emott in his opinion to which I had yielded my first impressions. On a re-examination, I have adhered to the opinion of a majority of the court, that the learned judge before whom the action was tried erred in rendering judgment for the plaintiff.

Taking the lease in its entirety—and that is the proper way to construe every instrument in writing—it demised the rolling mill, furnace and machinery, and the land under and immediately adjoining the mill, with the dwelling house formerly occupied by the Rev. Dr. Willard, the use of certain wire blocks or spindles, pullies, wheels and shafts, and the use of the rail road in common with others, including the lessor. The right to use and enjoy all such property passed to the defendant by the lease, and no part of it rested simply in covenant. The habendum included the premises previously described, *with the appurtenances*, and what was said afterwards, as to the right to use the rail road, may be considered as a specification of one of such appurtenances. If it had not acquired that character before, it might well have been created by the lease. (*Co. Litt.* 12 *b.* 1 *Ventr.* 40. *Com. Dig. tit. Appendant and Appurtenant, A.*) It is true the habendum clause could not enlarge the premises. (*Com. Dig. tit. Fait, E.*) But it may well refer to what is granted in any part of the conveyance. To say that it must refer exclusively to what precedes it would, in cases like the present, be sacrificing substance to form. The stipulation for the payment of rent, by the use of the word "therefore" shows that it was to be for all that had been described or referred to immediately before—both the premises and their appur-

tenances. It follows, then, that the use of the rail road was actually leased, and that rent was to be paid for it as an appurtenance. If so, what was said by Chief Justice Savage, in *Etheridge* v. *Osborn*, (12 *Wend.* 529,) is directly applicable. There the lessor had covenanted to construct a raceway, which the lessee was to have the privilege of using, but it was never made. It was decided that the use of the raceway had not been demised, for it had no existence when the lease was executed, nor in fact at any time. But it was remarked by the chief justice, that "had the landlord, after the raceway was dug and the water let in, and enjoyment by the tenant, subsequently diverted the water from the raceway, or a part of it, that, I think, would have amounted to an eviction within the cases of *Lewis* v. *Payn*, (4 *Wend.* 423,) and *Dyett* v. *Pendleton*, (8 *Cowen*, 727 ;) which last case, in the court of errors, carried the doctrine of eviction to the utmost verge." I have no difficulty in concurring in the opinion that an interruption to the enjoyment of a privilege conferred by a lease, by physical means adopted *by the landlord*, constitutes an eviction. If so, such eviction clearly suspended the rent for the whole, and more especially any remedy by the landlord, by reason of its non-payment.

It is no answer to this to say that the tenant has recovered damages for the breach of the covenant for the use of the railway. If it would in any case relieve the landlord from a penalty once incurred, it could not have that effect in the case of a continuing covenant. Here the tenant was to have the use of the rail road during the entire term. The landlord can only relieve himself as to the future by restoring the rails which he has wrongfully removed.

The judgment at the special term must be reversed, and there must be a new trial; costs to abide the event.

EMOTT, J. After attentively considering all which was cited and urged upon the re-argument of this cause in favor of sustaining the judgment, I adhere to the opinion expressed by me on the first hearing. With some slight modifications and additions which I have made, to meet suggestions which were

made on the re-argument, the opinion then delivered states the reasons for which I think there must be a new trial, and Mr. Justice BIRDSEYE concurs in the reasoning and conclusion of that opinion. We are unanimous that the judgment must be reversed, and a new trial ordered.

[DUTCHESS GENERAL TERM, April 14, 1857. *S. B. Strong, Emott* and *Birdseye,* Justices.]