By the Court—Woodruff, J.
The action is brought by the plaintiff as lessor of the lot and buildings known as Eo. 371, in Broadway, in the City of Eew York, against the defendant, as the assignee of the lease, to recover one quarter’s rent, accruing while the defendant is averred to have been in possession, to wit, on the 1st day of February, 1860, to the amount of $1,375.
The defendant, by his answer, admitted the lease to his assignor, (one Kirker,) the assignment to himself, his entry and possession of the premises, as assignee, but in trust for *61 the payment of the debts of Kirker, who had become insolvent.
The answer then proceeded to set up what was claimed to be a breach of the implied covenant for quiet enjoyment, by the acts of one Myers, the owner of the adjoining lot, (No. 373,) who, as the answer alleged, was the actual owner of a strip of land from five to eight and one-quarter inches in width, extending from the rear of the lot, sixty feet in length, towards Broadway, whereon the north wall of the demised premises in part rested., On the trial the presiding Justice, on the objection of the plaintiff’s counsel, having ruled that the facts alleged in the answer constituted no defense, excluded all evidence offered by the defendant in support thereof. Thereupon the defendant, by leave of the Court, amended his answer, and offered to prove the facts alleged in such answer, as amended; but, on objection, all evidence was excluded, on the ground that if the facts were proven, they constitute no defense to the action.
On the part of the defendant it is claimed that the facts alleged in the answer, as amended, constitute an eviction of the tenant from a part of demised premises, under paramount title, and so operated as a suspension of a part of the rent. They were further claimed to constitute a breach of a covenant for quiet enjoyment implied in the demise, and to entitle the defendant to damages by way of counterclaim.
Though inartificially framed, the answer, as amended, in substance avers: That the defendant being in the possession of the demised premises, Myers, who was the owner of the lot next adjoining, including a portion of the demised premises, that is to say, of the strip of land above mentioned, whereon the north wall of the demised building rested, notified the defendant of the encroachment upon his lot, and of his title to said strip of land, and that he was about to excavate and build upon his lot, and required the defendant to remove the said wall therefrom. That the defendant thereupon gave written notice to the plaintiff *62 of Myers’ claim, and of his requirement that the wall Be removed, and demanded that the plaintiff take such measures as he might be advised, to defend his rights and protect the premises, and notified him that the defendant would hold him responsible for all expenses caused by a removal of the wall, and for all loss and injury to his business, for any eviction by the plaintiff or others from any portion of the demised premises. That the plaintiff wholly disregarded such notice, and neglected to shore up the wall or to claim or enforce any right to have it remain where it stood. That Myers proceeded to excavate for the foundation of his building, and the said north wall was in danger and would have fallen as such excavation proceeded, which would have occasioned the fall of the building itself, the destruction of a large amount of the defendant’s property, and possible loss of life; and the removal and reconstruction of such wall was a necessity to prevent such damage and danger; and the defendant, to prevent the fall of the building, did cause the floors to be supported, and such north wall to be taken down and rebuilt on the line of the plaintiff’s lot.
That such disturbance of the defendant’s quiet enjoyment of the said premises was occasioned by the paramount title of Myers, in and to the said strip of land encroached upon by the said wall and which was not owned by the plaintiff, which paramount title existed before and at the time of such disturbance, and the defendant was evicted, by reason thereof and of such excavation, from the possession of so much of the demised premises as stood upon the said strip of land, and from the quiet use and enjoyment of all the demised premises.
I. The question we propose first to consider is, whether the facts constitute an eviction from a part of the demised premises, entitling the defendant to an apportionment of the rent and an abatement according to the relative value of the part from which he is evicted.
That if the facts constitute an eviction, such a consequence follows, we do not .understand the plaintiff to deny. *63 An eviction by the landlord from either the whole or a part of the demised premises suspends the whole rent. An eviction by another under paramount title, if of the whole, suspends the whole rent; if of a part of the demised premises, it entitles the defendant to an apportionment.
The answer distinctly avers a paramount title in Myers to the strip of land which it alleges formed a part of the demised premises. This must be taken to be admitted for the purposes of the appeal; since otherwise, if material, the defendant should have been permitted to prove it.
The defendant yielded, under the pressure of danger that the building would be thrown down, to Myers’ paramount title, and so lost the possession of a part of the demised premises. This is a view of the answer as favorable to the plaintiff as the allegations will permit. He gave full notice to the plaintiff, and at - length yielded the possession, and his so yielding must be taken to have been in good faith, compelled by the alleged necessity, else evidence of this should have been received to be submitted to the Jury.
The question is, therefore, reduced to this: Can the dispossession of a tenant, by a third person having a title paramount to the lessor, amount to an eviction, unless it be a dispossession by virtue of a judgment' at law or decree in equity? or in the alternative, must the tenant resist the true owner and defend the possession, by force if need be, at his peril until, by some judgment or legal process, he is ousted ?
The plaintiff here insists that the tenant is bound to maintain his possession and that of his-landlord, until he is dispossessed by virtue of such judgment or decree; and that nothing less than this will constitute eviction under paramount title suspending the rent or excusing the tenant from its payment, however true it be, that such paramount title is in the disseisor, and however ready the tenant is to take the burden of establishing it.
This view of the duty of the tenant calls upon him to resist the lawful demands of one who has a perfect legal *64 right to enter the premises. In this sense, it calls upon him to do what is illegal.
It subjects him to damages in favor of the true owner.
It places him in a situation in which, if by artifice or accident the true' owner can obtain peaceable possession, the tenant must still pay rent to his lessor although he cannot recover possession by action against such owner.
And aside from the provisions of the statutes against forcible entry and detainer, if by any force or compulsion, the owner can obtain actual possession, the tenant is remediless, for he can maintain no action to recover possession against the owner, and yet he must pay the rent. And trespass for a tortious entry upon the premises will wholly fail to protect the tenant in the enjoyment of the premises or compensate him in damages for the disturbance of that enjoyment, for to his action against the owner, the plea of title will be a conclusive bar.
And, at the least, it requires the tenant to engage in a litigation which he knows to be futile, and as the case may be, when the lessor will take no measures for his protection, with the certain knowledge that judgment must be rendered against him, and he be so compelled to yield possession and pay costs and damages for withholding it.
This claim respecting the duty of a tenant seems harsh, and to my mind unreasonable, and yet if it be law, “ the perfection of reason” may not be contemned or disregarded.
Good faith, or the absence of collusion with a third person to deprive the landlord of his possession, should, no doubt, be an essential requisite to the eviction under alleged paramount title; but if in good faith the tenant yields to the better title, and takes the burthen and hazard of proving, when called upon by his landlord, that such title is in fact paramount, there would seem no sufficient reason for requiring-him to bear all the hazards of an illegal resistance to the claim of the real owner, or the bur-then of a litigation with him, knowing that he must be defeated. 5or does it seem altogether reasonable to *65 require the tenant to pay rent for what he has not enjoyed.; to the enjoyment, of which he had no right, and, to which Ms lessor had no title.
The argument which denies the right of the tenant to defend, unless dispossessed by legal process or judgment, is mainly urged as resulting from the rule that a tenant who is put into the possession of the demised premises by Ms lessor, may not deny the title of the latter; or, in the more concise but by far too comprehensive words usually employed, “ a tenant cannot deny Ms landlord’s title.”
The rule itself has numerous qualifications, and the right to prove eviction under paramount title, by virtue of a judgment, of itself shows that where there is such an eviction the rule has no application.
At the common law no such rule existed. The plea " Nil habuit in tenementis” was a good defense to an action for the rent, or to an avowry in replevin for goods taken as a distress. (Gill v. Glasse, Yelv., 227; S. C., Cro. Jac., 312; Aylet v. Williams, 3 Lev., 193; Skinner, 624; Coke Lit., 47, b.; Jordan v. Twells, Rep. tem. Hardwicke, 171; Note to Doe v. Oliver, 2 Smith Lead. Ca., 417,4 Am. ed.)
It is true that when the demise to the tenant was by deed indented, the tenant could not avail himself of that plea, but the reason was not because a tenant could not deny his landlord’s title, but because in such case he was held to have, by the indenture, conclusively admitted the title. He was estopped by the indenture either to plead or prove’ the contrary, not forbidden by any rule existing aside from snob, conclusive admission as the form of his obligation imported. Hence, when the demise was by deed poll, or by parol, (whether written or oral,) the plea was good. (Palmer v. Ekins, 2 Ld, Raym., 1550, and cases last above cited.)
Ho doubt the rule referred to originated in the statute of 11 Geo. II, eh. 19,’ which, by several of its provisions, operated to place tenants under more stringent obligations to their landlords, and protected the latter against fraud and collusion, and two of them bore upon the rule .in *66 question. Some of the provisions of that statute were very early enacted in this State, and have ever since been continued in force. (Act of 1788; 2 Greenl. Ed. of Statutes, p. 115, $ 28, &c.; 1 R. L. of 1813, pp. 143, 525, $ 25; R. S„ pp. 739, [§ 146,] 744, § 3.)
Section eleven declared that an attornment to a stranger should be “absolutely null and void to all intents and purposes whatsoever, ” and the possession of the landlord * * should not be deemed changed, altered or affected thereby; “provided always that nothing herein contained shall extend to vacate or affect any attornment made pursuant to, or in consequence of, some judgment at law, or decree or order of a court of equity, or made with the privity and consent of the landlord, * * or to any mortgagee after the mortgage is become forfeited.”
And section twenty-two declared that it should “be lawful to and for all defendants in replevin to avow and make conveyance generally, that the plaintiff in replevin, or other tenant of the lands and tenements whereon such distress was made, enjoyed the same under a grant or demise at such a certain rent during the term wherein the rent distrained; for incurred, which rent was then and still remains due; *■' * without further setting forth the grant, tenure, demise or title of such landlord.” * * (Statutes at Large, Pickering’s edition, vol. 17, pp. 187, 191.) And in Sullivan v. Stradling, (2 Wils., 208,) the effect of this last named section of the statute is fully considered, and it is held that in the single case of replevin for goods taken by distress where there has been, an enjoyment by the tenant under the demise, the landlord-was not only not bound to set out or prove his title, but the tenant could not, by plea to the avowry, compel him to take issue upon such title nor bring the title in question. But it is stated to have been admitted on both sides that “Nil luibuit in tenementis” is a good plea in debt or covenant for rent upon a lease not indented. And, as already remarked, the reason why it is not a good plea when the action is on an indenture, is not that the tenant may not deny his landlord’s title, but that having *67 admitted such title by an instrument which is conclusive as an estoppel, he .is precluded thereby.
Another section of the same statute (§ 14) gave an action to the landlord for a reasonable satisfaction for lands held or occupied by the defendant, and if on the trial an agreement or demise (not by deed) appeared, the rent therein reserved should be taken as the quantum of damages to be recovered.
And, while on the one hand the plea “Nil hdbuit in tenementis ” had been justified and sustained on the ground, 'among others, that if true there was no quid pro quo for the undertaking of the tenant to pay rent, so on the other, the equitable doctrine began now to be recognized by the Courts, founded mainly upon the above mentioned statute, that where the tenant had enjoyed the premises under and by virtue of a demise from the plaintiff, he ought not to be permitted to refuse the payment of rent on the mere ground that there is an outstanding title in some third person; and upon the like equitable view of the subject, such a tenant who has been put into possession by his landlord and has enjoyed the same, shall not,-when his term is ended, by the expiration thereof, or by entry for condition broken, be permitted to hold over and resist an ejectment for the recovery of possession by his landlord, by the mere allegation and proof that the plaintiff had not the title when the defendant so entered under him.
And to this effect is a long course of decisions from the case of Sullivan v. Stradling down, both in England and this country. See Doe v. Pegge, (1 T. R., 766,) Doe v. Mills, (2 Ad. & Ellis, 17,) Doe v. Baytup, (3 Id., 188,) Doe v. Fuller, (1 Tyrw. & Gr., 17,) Doe v. Symthe, (4 M. & S., 347,) which were actions of ejectment; and Cooke v. Loxley, (5 T. R., 4,) Lewis v. Willis, (1 Wils., 314,) Agar v. Young, (1 Carr. & Mar., 78,) Fleming v. Gooding, (4 M. & Scott, 455; S. C., 10 Bing., 549,) Rennie v. Robinson, (1 Bing., 147,) which were actions for use and occupation; and Parry v. House, (Holt., 489,) Cooper v. Blandy, (4 M. & Scott, 562,) which were actions of replevin for goods taken *68 as a distress for rent in arrear. And in this State, to the like effect, are Jackson v. Harder, (4 J. R., 203,) ejectment; Jackson v. Rowland, (6 Wend., 670,) ejectment; Lawrence v. Miller, (1 Sandf., 550,) Kenada v. Gardner, 3 Barb. S. C. R., 589; Nellis v. Lathrop, (22 Wend., 121.)
This shows, I think, the origin of the rule in the statute referred to, and in the equitable application of its principles ; and while the right of the defendant to defend, by a mere impeachment of his landlord title, is greatly modified, it is nevertheless clear that the rule is much more narrow and limited than the broad generality of the terms in which it is given would import. It amounts to this: A tenant may not accept possession from a lessor, hold and enjoy under the demise, and then refuse to pay the rent, nor refuse to yield the possession to his lessor at the termination of his lease, and justify such refusal, in either case, by alleging or proving that the lessor under whom he has had such enjoyment had in fact no title.
But this is far short of the proposition that when his holding and occupation under the demise have ceased, however that holding or occupation was terminated, and whether it has ceased in respect to the whole or a part of the demised premises, he may not resist the collection of rent alleged to have thereafter accrued, by proof that his lessor had no title, and his (the tenant’s) possession was lost for that cause.
That where the title of the lessor has expired since the demise, the tenant may allege and prove that fact, and successfully resist the payment of rent or the recovery of possession, is abundantly settled both in England and here. (England v. Slade, (ejectment,) 4 T. R., 682; Doe v. Ramsbottom, (ejectment,) 3 M. & S., 516; Gravernor v. Woodhouse, replevin,) 1 Bing., 38.)
In Rogers v. Pitcher, (6 Taunt., 202,) the rule received ■this further limitation. The plaintiff in replevin had paid rent to the defendant, and so recognized the existence of ' the relation to him of tenant, and yet she was allowed to .•show that such defendant had not title at the time of such *69 payment; the plaintiff had been put into possession by another lessor, and was permitted to show that the attornment to the defendant was made under circumstances which did not warrant it, and that he had not the title. In Hopcraft v. Keyes, (replevin, 9 Bing., 613,) and in Brook v. Biggs, (use and occupation, 2 Bing. N. C., 572,) the defendant was permitted to show that he entered under the holders of the legal title. That the plaintiff obtained an agreement for a lease, and the defendant thereafter paid rent to him, but that subsequently, by reason of his breach of the agreement, his title to the rent failed, the agreement being put an end to. So in Downs v. Cooper, (2 Ad. & Ellis, N. S., 256, replevin,) the defense was that the landlord and a third person, claiming title, had submitted the question of title to a barrister, whose opinion was in favor of the claimant: in Doe v. Watson, (2 Stark., 230,) that the landlord had sold: in Doe v. Seaton, (2 Cr., Mees.. & Ros., 728,) that the landlord’s title had expired; S. P. Neave v. Moss, (1 Bing., 360,) Doe v. Whitroe, D. & R., N. P., 1.) And see Franklin v. Carter, (1 Mann. Gr. & Scott, S. C., 9 Jur., 874,) in which, although the claimant had recovered in ejectment against the lessor, that only made the proof of paramount title in the claimant more easy; the case still shows that the tenant could allege and prove title in the claimant. (See also Den v. Ashmore, 2 Zabriskie N. J. R., 261.)
Similar cases have arisen and been decided in this State, showing that when the landlord’s title has expired this will' be a defense to the tenant. (Jackson v. Rowland, 6 Wend., 670; Lawrence v. Miller, 1 Sandf., 550; Evertson v. Sawyer, 2 Wend., 512; Nellis v. Lathrop, 22 Id., 121;; Giles v. Comstock, 4 Comst., 276.)
Other cases in England and in this and other States of the United States, show that where the lessor had given a mortgage before or after the demise, the title of the mortgagee may be set up as a defense by the tenant, both to an ejectment and to- a claim for rent. The entry of the mortgagee and payment of rent to him is a good defense. *70 (Doe v. Edwards, 5 Barn. & Ad., 1065; Moss v. Gallimore et al., Doug., 279, and notes thereto in 1 Smith’s Lead. Ca., 595, [310]; Doe v. Barton et al., 11 Ad. &.E1., 307; Waddilove v. Barnett, 2 Bing. N. C., 538 ; Pope v. Biggs, 9 Barn. & Cres., 245; Welch v. Adams, 1 Metc., 494; Magill v. Hinsdale, 6 Conn., 465; Stone v. Patterson, 19 Pick., 476; Jones v. Clark, 20 J. R., 52; Simers v. Saltus, 3 Denio, 214.)
Without reviewing these cases in detail, a reference to them will show that the rule referred tó has the limitations above suggested, and that it is not an arbitrary and unqualified rule which forbids the tenant who .has lost the enjoyment of the premises, or who has failed to enjoy under the demise, to show that the landlord is not entitled to rent. And it will be material hereafter also to notice that these cases also show that a tenant is not inevitably compelled to wait for legal process or judgment as his sole protection, notwithstanding the technical definition of the word “eviction” to be presently stated.
Thus, in Gravenor v. Woodhouse, (1 Bing., 38,) the court say, (while recognizing the rule that a tenant may not deny the title of him who has put him in possession,) “the supposed generality of the rule has been departed from in many cases,” citing England v. Slade, (ubi supra,) Doe v. Ramsbottom, (3 M. & S., 516,) and Rogers v. Pitcher, (6 Taunt., 202,) and add: “ A variety of cases may be put, in which a tenant would be excused from paying rent to a person not entitled to it.”
The discussion thus far had, while it may throw light upon the precise point to be decided, does not fully embrace or determine it.
• That eviction of the tenant by a third person under title paramount is a good defense; that such an eviction suspends the rent, is unquestionable, and is not denied in this case.
And that .if the tenant be evicted under such a title, of a part of the demised premises, the rent must be apportioned; and that such eviction is a defense, as to a part of such rent, is equally settled. (Richard Le Taverner's Case, 1 Dyer, 56; Lewis v. Payn, 4 Wend., 423; Lawrence v. *71 French, 25 Id., 443; Peck v. Hiler, 24 Barb., 182, 186; Hegemem v. McArthur, 1 E. D. Smith, 147; Vermilya v. Austin, 2 Id., 203; affirmed on appeal, 11 N. Y. R., 216.)
The very proposition that an eviction by a third person, under paramount title, suspends the rent, affirms that, being evicted, the tenant may show that the evietor had title paramount to that of the landlord; nay, that he must show it in order to • establish his defense.' In the very terms of the rule, then, it is implied that, being evicted, the tenant may deny his landlord’s title. And this he may do by showing that his landlord never had title, or that his title has ceased or expired. But it is, nevertheless, the eviction and not the denial of the landlord’s title, or proof of its failure, which constitutes the defense. The proof of paramount title is in order that the eviction may be a defense, and because eviction by a stranger to the title is no defense. The result maybe thus stated. Eviction under -title paramount is a defense. In order to establish it, the tenant must prove title in the evietor. This may be by proving that the title was in such evietor before the lease and ever since, notwithstanding the incidental result that in such proof he shows that even at the time of the demise his landlord had no' title. Or it may be by proving that the title has been acquired by the evietor since the lease, and notwithstanding in such proof he shows that, although the landlord had title at the time of the demise, that title has ceased. But, in each case, eviction, or what is in law tantamount thereto, must be proved.
Can that eviction be proved otherwise than by judgment or decree; or, in other words, will anything short of-removal from the premises, by or under a judgment or decree, amount to an eviction ?
It will be seen by reference to the cases already cited, that where the lands have been sold under foreclosure or on execution, since the making of the demise, and the title of the landlord is thereby divested, (whether the mortgage was given before or after such demise,) the right 'of the landlord is at an end; and so also that where the title of *72 the landlord was defeasible or terminable by lapse of time, if it was defeated or terminated during the term, the landlord’s right to rent also ceased.
But here the eviction sought to be established as a defense, involves the necessity of proving that the landlord had no title when he gave to the defendant his lease. We can find no sufficient reason for saying that if the tenant is put out of possession without a judgment or decree, he may show that the landlord’s title had expired, and the title of the disseizor was paramount, and yet that, (although he is put out of possession,) he may not show that his landlord never had the title, and so that the title of the disseizor was paramount.
Be it observed that we are not considering whether a tenant may attorn to a stranger. That question is settled by statute, both in England and this State. The point is not on the validity of an attornment, but is, whether, being put out of possession, the tenant may show that this was done under a title, the validity of which he could not impeach, by virtue of a right which he could not legally deny, and by an authority which he could not legally resist; for all this, the tenant in such case assumes to do, and did assume to do in the case now before the Court.
The definition of the term “ eviction,” given by Jacobs, it is true, declares it to be “ a recovery of land, &e., by form of law.” But, conceding that to be the original and technical meaning of the term, it is used, nevertheless, in a modified and more general sense when applied to eviction by the landlord himself, and also to a breach of the covenant for quiet enjoyment, and of the covenant of warranty. (See 1 Saund., 202, 204, note; Upton v. Greenlees, 17 Com. Bench R., 51; several of the cases already above cited, Rawle on Covenants, Tit. “ Covenant for Quiet Enjoyment,” and “Covenant of Warranty and the breach thereof.”)
In Hopcroft v. Keys, (9 Bing., 613,) where the landlord’s title was a defeasible one, the tenant was permitted, in answer to an avowry of taking as a distress for rent, *73 to show that the landlord’s title was defeated: that the real owner entered for condition broken, but without process, and turned out all in possession, and afterwards made a new agreement with the tenant, under which he was in possession at the time of the distress. This case tends strongly to show that what is called eviction by title paramount does not mean necessarily and solely eviction by legal process or under a judgment or decree.
In Upton v. Greenlees, (17 Com. Bench R., 64,) Jervis, Ch. J., said: “ The term eviction is now properly applied to every class of expulsion or amotion,” &e. It is true that there the eviction alleged was by the lessor himself, but no good reason is apparent for withholding its application from a forcible expulsion or amotion by the true owner which the tenant cannot successfully resist or pre-" vent.
And in Mayor of Poole v. Whitt, (15 Mees. & Wels., 571; 16 Law J., 229,) where eviction under paramount title was pleaded as a defense to an action for rent, although the defendant failed on the ground that the title proved was not paramount, but a title to the reversion only, yet Oh. Baron Pollock, says: “ If a party having a good right to eject the occupier of demised premises, goes there and demands to exercise that right, and" the tenant says,
‘ I will change the title under which I now hold and will consent to hold under you,’ that, according to good sense, is capable of being pleaded as an expulsion.”
And in Evertson v. Sawyer, (2 Wend., 507,) Ch. J. Savage, asserting the rule that in an action for use and occupation the tenant cannot deny the title unless he first • divests himself of possession, held, following the opinion of Lord Campbell, in Balls v. Westwood, (2 Camp. 11,) that the tenant might disclaim the title under which he entered, and take a new lease from the purchaser at Sheriff’s sale; and although this would be an attornment void under our statute, yet it would operate as a defense to the claim for rent.
And in Greeno v. Munson, (9 Verm., 37,) North v. Barnum, *74 (10 Id., 220,) it was held that, the tenant acknowledging the title of another in repudiation of his landlord’s title, his possession becomes adverse and the statute of limitations begins to run in his favor.
The precise point now before us, that is to say, whether the tenant could allege and prove dispossession (without a judgment or decree) by a third person, under title paramount, was considered and decided by the Supreme Court of Massachusetts, in Morse v. Goddard, (13 Metc., 177.) It was there held that it is not enough for the tenant to prove an outstanding title to avoid the payment of rent,.but he must show an ouster or eviction under that title; but an eviction under a judgment is not necessary. An actual entry by one having a paramount title and present right of entry is an ouster of the tenant, and the latter is not bound to hold unlawfully and subject himself to an action, and is not, therefore, bound to resist such an entry. In that case, the Court went much further than this, and further than necessary to the point now under consideration, viz., that a judgment or decree is not essential to such an ouster as will excuse the payment of rent.
The tenant there had voluntarily yielded to the claim of the true owner on being threatened with an ejectment, and after notice to his landlord of the claim, had consented to pay rent to the claimant. The charge to the Jury was, “ if the defendant, bona fide, yielded possession of the premises to the real owners, to prevent being expelled, and the plaintiff (the landlord) had notice of this, and if the defendant had satisfactorily proved that the claimant owned the estate by a good title, and had a right to take immediate possession at the time, * * * such yielding of possession was equivalent to an actual ouster, and was competent evidence in defense to the plaintiff’s claim for rent accruing after such yielding of possession.” And this charge was fully sustained.
The defendant in such case has the burthen of. proving, not only that the claimant’s title is paramount to that of the landlord, but that he acted in good good faith.
*75 If the absence of any statute in Massachusetts, forbidding an attornment to a stranger, gave the decision a larger scope than would be proper here, the case, nevertheless, is a direct authority that the tenant is not bound to wait for a judgment or decree, nor resist by force a claimant having the actual title and a present right of entry. And the decisions in Fitchburg Co. v. Melven, (15 Mass. R., 268;) and Smith v. Shepard, (15 Pick., 147,) justify a tenant in yielding to the entry of a mortgagee, under a mortgage given before the demise, and hold the entry of such mortgagee an eviction, and, as such, a defense to an action of covenant for the rent. And so also in George v. Putney, (4 Cush., 355,) the doctrine was asserted that a lessee under a defective title may yield the possession without awaiting a judgment or decree.
In the American notes to Moss v. Gallimore, (1 Smith’s Lead. Ca., 595, [310],) it is said, “ no estoppel or form of action can deprive the tenant of his right to show an eviction by title paramount, and such eviction must always suspend subsequently accruing rent. How, it is perfectly well established, that to obtain the legal right given by an eviction, it is never necessary to wait for an ejection by form of law.”
In Blair v. Claxton, (18 N. Y. R., 529,) a partial eviction was held not only to entitle the tenant to an abatement of the rent, but that it might be shown as a counterclaim by way of recoupment, as an equitable defense, and would entitle the defendant to damages for a*breach of the covenant for quiet enjoyment. In that case the claimant of the elder title had, it is true, established such title as against the landlord, by a decree; but the tenant was not evicted by the decree. He was evicted or ousted by act of the party having paramount title; the existence of the decree, (conclusive as against the landlord,) only furnished the tenant with the ready means of proving that such title was in fact paramount, and so this case in effect affirms the views above expressed.
These considerations and a review of the cases above *76 referred to, seem to us to show, that the tenant, being put out of possession, may defend an action for the rent by proof that he was ousted by one having a title paramount to that of the landlord, although the ouster was not by virtue of a judgment, decree or any legal process;—such tenant taking the burthen of proving that he acted in good faith, and that such title was in fact paramount;—and that the proof offered in this case would have established such an ouster, and should have been received.
2. If this case be considered, secondly, upon the question whether the facts alleged do not constitute a breach of an implied covenant for the quiet enjoyment of the premises, then there are other cases, as well in this State as in other of the United States and in England, bearing upon this subject. The lease here was for three years only, and was under seal. If it was doubtful whether leases for years were embraced in our statute, which declares that “no covenant shall be implied in any conveyance of real estate;” (1 R. S., 738, § 140;) and the ease of The Mayor, &c., v. Mabie, (13 N. Y. R., 151,) contains the opinion that such leases are not so included; it must be taken, as settled by that case, that leases for a term not exceeding three years are not. (Edgerton v. Page, 20 N. Y. R., 286.) If not, there was an implied covenant by the plaintiff for the quiet enjoyment of the demised premises, and the question arises what constitutes an eviction amounting to a breach of that covenant. And on this question the modern doctrine is that such a covenant is broken, and the breach may be proved by the covenantee, by an expulsion by one having paramount title without any judgment or decree. Such is the doctrine clearly derivable from what is said on this topic in Rawle on Covenants, and the numerous cases cited there; and, so far as we can discover, the cases which hold the covenant of warranty broken by such an expulsion are equally in point. (See also Blydenburg v. Cotheal, 1 Duer, 196, and cases cited.)
Platt on Covenants,. in treating of the action on the covenant for quiet enjoyment, states (p. 328) where an *77 ejection has actually taken place, in assigning a breach, it is sufficient to allege that, at the time- of the demise to the plaintiff, A. B. had lawful right and title to the premises, and having such lawful right and title entered and evicted the plaintiff, without showing that he evicted him by legal process, citing Foster v. Pierson, (4 T. R., 617,) Hodgson v. East India Co., (8 Id., 278.) The question discussed in these cases was oné of pleading, but, in the first, Btjlleb says it is the same as saying “he entered bylawful right and title,” and at the trial the plaintiff would have failed in proving this allegation unless he had shown a right of entry in A. B.
And in 2 Stephens’ Hisi Prius, 1084, it is said this covenant will not extend to a tortious eviction or ejectment by a stranger, “but if the stranger claim by older title than the lessor’s, the lessee may have covenant against the lessor, for he then can have no redress against the stranger, whose title is good in law.”
And in Hamilton v. Cutts, (4 Mass. R.,349,) which was an action for breach of warranty, it was held that the tenant may yield to a dispossession without losing his remedy on the covenant. But he consents at his peril. If the title to which he has yielded be not good, he must,abide the loss; and in a suit against his warrantor the burthen of proof will be upon the plaintiff. So in Drew v. Towle, (10 Foster, 537,) the Court held that the coven'antee had an undoubted right, upon being satisfied of the invalidity of his title, to abandon the possession of the premises, and thereby avoid the necessity of litigation and its- attendant perplexities and expenses. He owed the covenantor no duty to remain in possession and sustain the burthen of defense when the title was invalid; * * the right of the covenantee was, at any period, to give up the possession to the rightful owner, upon • claim made; he was not bound to seek redress through a litigation which might be fruitless with the party having the title. (George v. Putney, 4 Cush., Miss. R., 354.)
In Parker v. Dunn, (2 Jones, N. C. R., 203,) it is held that a covenant for quiet enjoyment is broken, when the *78 covenantee is entered upon and dispossessed by one having superior title, though the entry is not made'under process. (And see Coble v. Wellborn, 2 Dev., 388; 2 Hilliard on Real Prop., 382.)
In Stone v. Hooker, (9 Cow., 157,) the above case of Hamilton v. Cutts is cited by Mr. Justice Cowen and approved as “ sound.”
In Lansing v. Van Alstyne, (2 Wend., 563, 565,) Ch. J. Savage concluded that the eviction which would alone avail as a defense to the claim for rent, or as a breach of the covenant for quiet enjoyment, must be by due process of law, and yet the cases cited, and the inference therefrom, appear to lead to the opposite conclusion ; and, subsequently, in Greenvault v. Davis, (4 Hill, 645,) Bronson, Justice, declares that he has met with no case where the point was so adjudged; and he adds that the remark of Ch. J. Savage, in the case mentioned, was not necessary to the decision of the case, nor the point decided; and thereupon it was held that to maintain an action on the covenant of warranty or for quiet enjoyment, that the eviction must be lawful, yet it need not be by process of law. (See the cases there cited, and the observations on Hunt v. Amidon, Id., 348.)
Again, in St. John v. Palmer, (5 Hill, 599, 602,) the same rule is asserted, viz.: “ It is not necessary that he ” (the covenantee) “ should be evicted by legal process; it is enough that he has yielded the possession to the rightful owner.” And in Fowler v. Poling, (6 Barb. S. C. R., 165,) the subject is discussed at length by Edmonds, J., and the rule re-affirmed. (White v. Whitney, 3 Metc., 81; Sterling v. Peet, 14 Conn. R., 244; Averill v. Wilson, 4 Barb. S. C. R., 180 ; Mitchell v. Warner, 5 Conn. R., 521, 522 ; Blydenburg v. Cotheal, 1 Duer, 196.)
In this view, also, the evidence .offered by the defendant was admissible, and should have been received.
The judgment should be reversed and a new trial ordered, the costs of the former trial and of this appeal to be costs in the cause, and abide the event.