JULIA D. MACOMBER, as Executrix, etc., of SUSAN FORD, Deceased, Plaintiff *v.* ROY K. CLARK, Defendant.

County Court, Niagara County, July 13, 1934.

*Thompson, Smith & Thompson,* for the plaintiff.

*Fogle, Bedenkapp & Andrews,* for the defendant.

GOLD, J. On April 9, 1928, Susan Ford, being the owner of certain premises located in the town of Lockport, Niagara county, entered into a lease with the defendant for a period of eight years from the 1st day of May, 1928, to the 1st day of May, 1936, for the monthly rental of seventy-five dollars to be paid in advance. The premises were leased for the purpose of erecting a gasoline service station thereon. On or about May 1, 1928, the defendant constructed a gasoline station on the same. Later there was also constructed upon another part of the premises a frame building, since known as Florence Gardens, which has been used as a restaurant and dance hall.

Between the south or back wall of the gasoline station and a dwelling house located on land owned by said Susan Ford, was a plot of ground on which was growing grass, trees and shrubbery and which plaintiff claims was used by said Susan Ford as a front yard to the dwelling in which she resided. It is claimed by plaintiff that the defendant at no time constructed a building on or caused the owner to cease the use of that property which has been used as a front lawn to her house. From April 9, 1928, until April 19, 1929, the above-mentioned front yard, so called, was not inclosed by a fence or any other means.

In April, 1929, said Susan Ford erected a fence around what she claimed to be the front lawn of her premises. It is claimed by the testimony of a daughter of said Susan Ford that at the time of the erection of said fence she asked the defendant if he had any objection to such erection; that he stated that he had none. The defendant denies this conversation.

Defendant had a survey made of the premises described in the lease, which showed, according to the survey, that a part of the premises inclosed by the wire fence was property described in the lease between said Susan Ford and the defendant.

This action was commenced to recover rent for the months of November and December, 1931, at which time the defendant joined issue, claiming that he had paid certain taxes which should have been paid by said Susan Ford; that, therefore, nothing was due under the lease upon the rent. Later and about the time the testimony was taken herein, the defendant served an amended answer, wherein he claimed that he was evicted from a part of the premises by reason of the construction of said wire fence and that, therefore, the plaintiff herein cannot recover judgment for rent under the lease.

The plaintiff claims that the defendant never took possession of the premises inclosed with the wire fence and, therefore, no eviction could have been had.

The plaintiff also claims that the defendant is estopped from asserting the question of eviction because of the fact that he continued to pay rent for the premises month by month since the erection of the fence in 1929, with the exception of two months, the months of November and December, 1931, and that he waived any claim that he was evicted from said premises by his own acts.

It is conceded by all parties that by the erection of the wire fence above referred to defendant was deprived of the use of part of the premises described in the lease.

" If such an eviction, though partial only, is the act of the landlord, it suspends the entire rent because the landlord is not permitted to apportion his own wrong." (*Fifth Avenue Building Co.* v. *Kernochan*, 221 N. Y. 370, *vide*, 373.)

An actual eviction consists in the deprivation by the landlord of the tenant, from the whole or some portion of demised premises, and where there has been an actual eviction from a part of the demised premises the tenant may retain possession of what he has, the entire rent being suspended until full possession has been restored. The act of the landlord in depriving the tenant of a portion of the demised premises being a willful one and done in defiance of the tenant and his rights under the lease is in the nature of a trespass. (*Carter* v. *Byron*, 49 Hun, 299.)

" Where the lessor enters wrongfully into part of the demised premises, the tenant is discharged from the payment of the whole rent, till he be restored to the whole possession." (*Lewis* v. *Payn*, 4 Wend. 423, 427.)

" A wrongful eviction of the tenant by the landlord from a part of the demised premises suspends the rent until the possession is restored." (*Christopher* v. *Austin*, 11 N. Y. 216.) (See, also, *Peck* v. *Hiler*, 24 Barb. 178; *Johnson* v. *Oppenheim*, 12 Abb. Pr. [N. S.] 499, and *Stern* v. *Brauer*, 62 App. Div. 388.)

The question presented by plaintiff is that even if an eviction of part of the premises did take place, the defendant, by continuing the payments for a considerable period, had waived any claim of eviction.

Prior to the dates on which the rent became due under the lease, and which are the subject of this action, the defendant caused to be mailed to the plaintiff a letter which contained the following paragraph: " Mr. Clark has requested me to notify you to remove the fence back of his gas station, so that he may use

said property in accordance with the lease. If this is not done by the first of October, he will remove it himself."

Said letter was mailed by J. Carl Fogel, attorney for the defendant herein.

The fence was not removed by either the plaintiff or defendant subsequent to the date of said letter and the defendant did continue to make monthly payments for approximately twenty-two months.

It has been held that subsequent payments do not alter the rule.

" The reason for the rule is founded in the fact that it is the duty of the landlord to secure to the tenant the peaceable, undisturbed possession and enjoyment of the demised premises. By an unlawful entry he becomes a wrong-doer and the law will not lend its aid to enforce a covenant in favor of one who has deliberately violated it."

" The subsequent payment of two quarters' rent does not have the effect of changing the rule; it did not change the obligations of the parties nor did it create new ones. The dispossession continued, and within the principle of the foregoing cases, the defendant could insist upon it at any time, when payment was attempted to be enforced." (*Buffalo Stone & Cement Co.* v. *Radsky*, 14 N. Y. St. Repr. 82, 84, and cases cited; *Seigel* v. *Neary*, 38 Misc. 297.)

" The mere payment of rent after eviction occurs does not operate as a waiver of the tenant's rights." (36 C. J. 317.)

Under the circumstances, I find that the defendant was evicted from a part of the premises, and, therefore, that the rent was suspended until such time as the whole property is restored to the defendant.

The complaint of the plaintiff is, therefore, dismissed.

Let a judgment be entered accordingly.