NEW-YORK,
May, 1808.

Dunnett
v.
Tomhagen.

*Van Vechten*, for the plaintiff in error.

*H. Bleecker*, contra, cited 2 *Wilson*, 374. 3 *Wilson*, 62. 2 *Saund.* 107. *n.* 2.

## Dunnett *against* Tomhagen.

During a voyage from *Greenock* to *New-York*, a ship called the *Sarah*, was, from necessity, abandoned by the crew as a wreck; and before leaving her, the seamen took out seven boxes of the cargo, into the boat, and were, afterwards, taken up at sea by a vessel

FROM the return of the *certiorari*, directed to the justices' court, in the city of *New-York*, the following facts appeared:

The defendant in error, who was the plaintiff below, declared for wages due to him as a mariner on board the ship *Sarah*, of which the plaintiff in error, was master, on a voyage from *Greenock* to *New-York*.

The defendant below pleaded the general issue, with notice of special matter. The cause was tried before the justices, by consent, without a jury, and the following facts appeared. The plaintiff was a mariner on board the *Sarah*, on a voyage from *New-York* to *Greenock*, and back,

called the *Morning-Star*, and brought to *New-York*. The merchandize saved was libelled by the crew of the *Morning-Star*, for *salvage*. In an action brought by a seaman of the *Sarah* against the master, for his wages from *Greenock* to the time the ship was abandoned, it was held, that no freight was earned, and that the seamen were not, therefore, entitled to *wages*; though they might have an equitable *lien* on the goods saved, for a compensation in the nature of *salvage*.

at 22 dollars per month. That the ship performed the voyage to *Greenock* in safety, and was abandoned as a wreck, on her homeward voyage, after being from port two months. The crew, in order to save the cargo, threw overboard their own clothes and other property. By their exertions they saved from the ship, so abandoned as a wreck, seven boxes of merchandize, which they stowed in the long-boat, and then left her. After being some time at sea, they were taken up by the sloop *Morning-Star*, and arrived safe at *New-York*, with the long-boat and merchandize. The property so saved, and the long-boat were libelled in the district court at *New-York*, by the crew of the sloop *Morning-Star*, for salvage. After the merchandize and long-boat were in the custody of the marshal, an agreement was made between the libellants and the owners of the merchandize, (the plaintiff being in no wise privy thereto,) that the property should be sold at auction, and that from the proceeds, the auctioneer should pay to the libellants, such sum as should be awarded for salvage by two arbitrators, who awarded a sum in favour of the libellants, but how much did not appear. The seven boxes of merchandize were owned by sundry merchants in *New-York*, and the captain and owners of the *Sarah* had no interest in them, beyond their *lien* (if any) for freight. The outward wages only, had been paid to the plaintiff. The plaintiff and all the crew, gave receipts in full; and when the receipts were demanded by the owners, they informed the men, that they should not have their wages unless they signed them. The mate and one seaman refused, and the plaintiff signed his mark, but received his pay for the outward voyage only. The boxes of merchandize sold at auction for 1,600 dollars. The wages due to the crew on the homeward voyage, at the time the ship was abandoned, amounted to 414 dollars.

The court below decided, that the *Sarah* could not, in contemplation of law, be considered as wrecked, nor the merchandize and long-boat in such a state of peril, as to entitle the crew of the *Morning-Star* to salvage, to the

prejudice of the seamen ; that as the owners had receiv-
ed the goods, and thus entitled the captain of the *Sarah*,
to his freight therefor, and that as sufficient had been
saved to pay the seamen's wages, and as the plaintiff had
made a sacrifice of his own property, to save that put into
the long-boat, the court, in the exercise of their legal and
equitable powers, gave judgment for the plaintiff for his
two months' wages, from the time of the departure of the
ship from *Greenock* to her abandonment at sea.

On the above facts, the case was submitted to the de-
cision of this court, without argument.

KENT, Ch. J. delivered the opinion of the court.

It is the general rule of the marine law, that freight is
the mother of wages, and that the safety of the ship is the mo-
ther of freight. The reason of the rule is, that the seamen
may have an interest in the safety of the ship, and may
thereby be induced not to desert her in cases of danger, but
to use their utmost endeavour, even at the hazard of their
lives, for her preservation.

No freight was earned in this case on the homeward
voyage, because no part of the cargo was delivered by the
ship. The contract was not fulfilled ; the voyage was not
performed ; and no freight was earned ; it follows as a ne-
cessary consequence, that no wages were due.

The salvage of part of the cargo, does not take this case
out of the general rule, because no freight was earned by
the ship on the goods saved. It is not the saving of the
cargo, but the earning of freight that entitles the seamen
to wages. The owners of the ship had no valid claim for
freight, as for a part performance of the entire contract,
because the fulfilment of the contract, was not dispensed
with by any act of the owners of the goods, nor indeed
was there even a part performance by the owner of the
ship. A salvor, and not the ship-owner, was here the deli-
verer of the goods saved. The seamen might, perhaps,
have had a valid *lien* on the goods saved, for an equitable

compensation, in the light of salvage, but this gave them no right of action against the ship-owners or master, on their contract for wages. The claims of salvage and for wages are totally distinct, and are to be tested by different rules. It must, however, be admitted, that the loose manner of using these terms in some of the books, and in the old marine codes, tends to mislead, but the confusion is easily cleared, when the terms themselves, and the principles upon which those claims respectively rest, come to be understood and applied with due precision.

The court are, therefore, of opinion, that the judgment below must be reversed.

Judgment reversed.