THE ADMINISTRATORS OF PATTEN *against* PARK.

Upon breach of contract, seamen are entitled to wages until their return home. Where a vessel, on a voyage, merely earns passage money, and no regular freight, seamen are not entitled to wages. *Ut semb. sed quæ. et vide* note.

Where shipping articles are in the admiralty court, in consequence of the ship's capture, the plaintiff, after notice to the defendant to produce them, may give parol evidence of their contents.

In an action, grounded on shipping articles, seamen not bound to produce them, even when they are on the records of an admiralty court.

SPECIAL action, on the case, for breach of contract.

Plea, the general issue, with an agreement to try the cause on its merits, without regard to the pleadings.

The intestate had signed shipping articles on board the ship Commerce, on a voyage from New York to Nantz, thence to Bourdeaux, and thence home, at a stipulated rate of wages per month. She sailed from New York and arrived safely at Nantz. After she had remained some time at Nantz, new shipping articles were prepared, and signed

Administrators of Patten v. Park.

by some of the crew, but not by the intestate. From Nantz she sailed for the Isle of France, where she arrived, having on board about 40 passengers, and a quantity of bricks, which had been put on board in lieu of a quantity of sand ballast which had been thrown out. She then sailed from the Isle of France for New York, and was captured on her voyage, by a British privateer, and sent into Liverpool, and there condemned as enemy's property. The intestate was detained for a long time on board the privateer, and then placed on board an American vessel, where he was obliged to work his passage home to New York. He arrived at New York on the 15th October, 1805, and died of the scurvy the next day.

The plaintiffs' counsel and the defendant's counsel called mutually on each other for the shipping articles. The plaintiffs had regularly notified the defendant to produce them; but he contended, that as the papers were not in his possession, but in the vice-admiralty court, as necessarily appeared from the testimony, he could not be required to produce them, nor, consequently, were the plaintiffs entitled to give parol proof of their contents.

VAN NESS, J. These facts can form no exception to the general rule. The plaintiffs may give parol proof of the contents of the articles.

It was then contended, by the defendant's counsel, that, as the shipping articles were the ground work of the plaintiffs' action, and were as much within their reach as within the defendant's, they ought to have produced them; and since they had failed to do so, that they ought to be non-suited.

Administrators of Patten v. Park.

The court denied the motion for a non-suit, and VAN NESS, J., said, the shipping articles are never in the seaman's possession, and if he had sent a commission to Liverpool, he could only have obtained a copy, and not the original.   Parol proof of the contents is sufficient.(1)

As the case came up on the merits generally, under the agreement of the counsel, it was contended for the plaintiffs:—

1. That the intestate had not entered voluntarily on the voyage to the Isle of France ; that this voyage, therefore, was a breach of the original contract, and he was entitled to wages until the day of his arrival at the port of New York.

2. That if the jury should be of opinion that he had voluntarily entered into a new contract at Nantz, that then he would be entitled to wages from New York to Nantz, and from thence to the Isle of France; the vessel having made a profit, viz., passage money of the passengers from Nantz.

VAN NESS, J.   If there has been a breach of contract in this case, the plaintiff is entitled to wages until his arrival at the port of New York.   But if he entered into a new contract at Nantz, then he is entitled to wages down to her arrival at the Isle of France, not on the ground that passage money and freight are the same *quoad* the wages of the seamen,—for there is an evident distinction between

(1) It is also expressly declared, by the statute, (20th July, 1790, 1 vol. Laws U. S., 134, sec. 6,) that it shall be incumbent on the master or commander to produce the contract and log-book, if required, to ascertain any matters in dispute; otherwise, the complainants shall be permitted to state the contents thereof, and proof of the contrary shall lie on the master or commander.

Administrators of Patten v. Park.

them, freight proceeding from cargo, under which head, passengers certainly cannot be ranked,—but on the ground that the bricks must have produced freight, as they are an article of commerce. Freight being the mother of wages, had she taken nothing to the Isle of France besides the passengers, no freight would have been earned; and, consequently, no wages would have been due.(2)

Verdict for the plaintiffs.

*Edwards*, for the plaintiffs.

*I. W. Mulligan*, for the defendant.

(2) The earning of freight is the most perfect test of the performance of the voyage, and consequently of the fulfilment of the sailor's contract; and for this reason it is deemed the mother of wages. *Dunnet* v. *Tomhagen*, 3 Johns. 154. I can see no difference, in this point of view, between passage money and freight. The one is a compensation for the safe transportation of a human being; the other of a chattel. They differ only in the subject matter; they are governed by the same rules of law in every particular. *Howland* v. *Brig Lavina*, 1 Peters, 126; Ib. 207, 208; *Watson* v. *Duyckinck*, 3 Johns. 336; *Detouches* v. *Peck*, 9 Johns. 210. And Molly, (title freight, B. 2; C. 4, 16,) expressly calls passage money freight. He remarks: "the master is not bound to answer freight to the owners for passengers, if they are found to be unable to pay, &c." The sailor's claim to wages, can never depend on the circumstance, whether the owner has thought fit to put a cargo on board his vessel or not. If a cargo is on board, the earning of freight is a true test of the performance of the sailor's contract; if no cargo is on board, the safety of the ship, which is the mother of freight, is then the true test. I am inclined to think the interpretation given by the judge, of the maxim, that freight is the mother of wages, is too narrow. In the case of the Saratoga, (Keating Claimant, 2 Gall. 164,) Story, J., in commenting on this subject, observes: "The general rule is often asserted, that to entitle seaman to wages, freight should be earned on the specific voyage for which they engage; and that if, by any disaster happening in the course of the voyage, the owners lose their freight, the seamen also lose their wages. The reason or policy of the rule is alleged, (in 1 Sid. 179 ) to be, that if, in case of the loss of the

4

ship by tempest, enemies, &c., the mariners were to receive their wages, they would not hazard their lives for the safety of the ship. The rule itself, also, is not without exceptions; if the voyage or freight be lost by the negligence, fraud, or misconduct of the owner or master, or voluntarily abandoned by them; if the owners have contracted for freight upon terms or contingencies, differing from the general rules of maritime law; or if he charter his ship to take a freight at a foreign port, and none is to be carried on the out voyage; in all those cases the mariners are entitled to wages, notwithstanding no freight has accrued.