RILEY *against* DELAFIELD.

*A sold a vessel to B. in whose name she was registered; but it was agreed between them, that A. should have the whole benefit of the freight to arise from a voyage, for which A. had previously chartered the vessel, and on which she was about to sail. B. insured the vessel as owner for the voyage, and A. procured insurance to be made on the freight of goods on board of the same vessel, for the same voyage; but the agreement between A and B. or the peculiar nature of A's interest, was not communicated to the insurer. It was held, that A had not an insurable interest; or such an interest as could be insured under the name of freight, without disclosing and specifying its peculiar nature.*

THIS was an action on a policy of insurance. Plea *non assumpsit*, and the statute of limitations.

The cause was tried at the *New-York* sittings, the 13th of *June*, 1810. The policy was dated the 29th of *September*, 1801, and purported that " *James Seton*, on account of *James Cummings*, as well in his own name, as for and in the name and names of all and every other person, or persons, to whom the same doth, may or shall appertain, in part or in whole," made insurance, &c. " at and from *New-York*, to the port of discharge in the *Mediterranean*, with liberty to stop at *Minorca* or *Malta*, upon the freight of goods laden, or to be laden, on board of the brig *Delia*, *Sprague*, master. The risk to continue until the goods should be safely landed, at her port of discharge in the *Mediterranean*, with the liberty aforesaid," valued at 6,000 dollars.

The declaration averred, that the plaintiff, at the time of making the insurance, was and continued to be interested in the premises ; and that the insurance was made on his account and risk.

As the cause was decided on a single point, it is unnecessary to state the facts or arguments, which relate to the other questions raised in the cause.

The vessel sailed on the voyage insured the 27th of *September*, 1801, and arrived at *Malta* the 21st of *November*, 1801, where she remained until the 9th of *December*, 1801, and sold part of her cargo. She sailed from thence to *Naples*, and arrived in the roads of *Naples* the 17th of *December*, 1801, and on the same day was driven on shore, in a storm, and totally lost, only 180 bags of pepper, part of the cargo, being saved.

Before the date of the policy, and before she sailed on

the voyage, the plaintiff sold the brig to *Howell*, who caused her to be insured, as owner; but the plaintiff having previously chartered her to *Isaac Kibbe*, for the voyage insured, it was agreed, at the time of sale, between the plaintiff and *Howell*, that the plaintiff should have the whole benefit of the freight arising from that voyage, which was the one insured. The vessel was registered in the name of *Howell*, who testified that he had no interest or concern in the *freight* for that voyage. The bill of lading was produced, which stated that the goods were shipped by *Isaac Kibbe*, to be delivered at *Venice*, to the consignee there.

On the 12th of *October*, 1801, the plaintiff assigned the freight and policy to *James Cummings*, as collateral security against a certain endorsement, made by *Cummings*, of the note of the plaintiff; the assignment was to be void, if the plaintiff paid the note, or indemnified *Cummings*. The note was not paid, and the assignment became absolute; but *Cummings*, who was a witness at the trial, declared that he had no interest in the cause.

It appeared that the plaintiff, afterwards, became a bankrupt, and his estate was regularly assigned on the 3d of *February*, 1803.

An abandonment was proved to have been duly made to the defendants on the 8th of *May*, 1802, and the preliminary proofs were exhibited on the 23d of *March*, 1808.

It did not appear that the agreement between the plaintiff and *Howell*, as to the freight, or the particular nature of the plaintiff's interest, was communicated to the defendant, previous to his signing the policy.

Several objections to the plaintiff's right of recovery were raised at the trial, which were overruled by the judge; and a verdict was taken, subject to the opinion of the court, on the points so overruled. A motion was made to set aside the verdict, and for a new trial.

ALBANY,
Feb 1811.

RILEY
v
DELAFIELD.

*Pendleton* and *Harison*, for the defendant, contended that the plaintiff had no insurable interest. Though *freight* is distinctly insurable, yet no person can insure *freight* generally, *eo nomine*, unless he be the owner of the ship. *Freight* is incident to the vessel, and unless otherwise declared, the insurer has a right to presume that the person who applies to insure the freight is the owner of the vessel, and interested to preserve and take care of the subject insured. At most, the plaintiff could be no more than an owner *pro hac vice*, and entitled to freight under a charter or contract; and such an interest must be specified or disclosed.* Unless the peculiar nature of such interest is stated to the insurers, great frauds may be practised, by having a double insurance of the same subject; for *Howell*, as owner of the vessel, might have insured the freight, and would have recovered, in case of loss, on proving that there were goods on board.

But, admitting that the plaintiff had an interest, it was transferred first to *Cummings*, and afterwards to the assignees. *Cummings* declared he had no interest in the freight, and so no action could be brought in the plaintiff's name, for his benefit. When the interest of *Cummings* ceased, it passed to the assignees of the plaintiff, under the general assignment of his property. It was enough, in the first instance, to show the bankruptcy of the plaintiff and the assignment. If the plaintiff afterwards acquired the property, it was incumbent on him to prove it.

*Colden* and *T. A. Emmet*, contra, insisted that the plaintiff had shown a sufficient insurable interest. It is not necessary to prove a legal interest; an equitable interest may be insured. There was a charter-party to *Kibbe*, existing at the time. The plaintiff had as much of an insurable interest as *Howell*.† The owner of a

* 2 *Johns. Rep.* 346.

† 4 *Dallas,* 859.

vessel may insure his interest generally, though there is a bottomry bond on the vessel; and the holder of the bottomry may also insure, *eo nomine*.* In *Cheriot* v. *Barker*† it was held, that the person hiring the vessel for the voyage cannot insure the *freight*, because he is to pay the freight, not to receive it. *Howell* could not insure it, for he was not, by his contract with the plaintiff, entitled to the freight. It is true, a peculiar interest like that of *bottomry*, must be specified; but if the plaintiff could not insure his interest under the name of *freight*, we know not by what name or description it could be insured. He was the only person entitled to receive the freight, and it has no other name or denomination.

The question is not, whether the plaintiff has, at this time, an interest, but whether he had an insurable interest at the time the policy was executed. In the eye of the law, the plaintiff must be regarded as having the right to the freight. It is not for the court to inquire who is the person ultimately to receive the money. It is enough that the plaintiff had an insurable interest at the time of the policy. The assignment to *Cummings* was by way of security; and if considered as a mortgage, yet the mortgagor has an insurable interest.‡ Several persons may insure and sue, in regard to the same subject, according to their respective interests. The averment in the declaration, as to interest, has reference only to the time of making the policy. The plaintiff is not bound to prove a continuance of interest down to the time of loss, or bringing the action.§ The assignment under the bankrupt law was made three years after the loss happened. We could have shown, if it had been necessary, that the assignees had sold and transferred all their interest in this policy to the plaintiff. A suit could not have been brought in the name of the assignees. If neither the assignees, nor any other person but the plaintiff, had an interest, then the suit

<div style="margin-left:auto">

ALBANY,
Feb. 1811.

RILEY
v.
DELAFIELD.

* 1 *Johns. Rep.*
385.
† 2 *Johns. Rep.*
346.

‡ 2 *Term Rep.*
187.

§ *Marshall*, 683.
2 *Bos. & Pull*
155. *note.*

</div>

ALBANY,
Feb. 1811.

RILEY
v.
DELAFIELD.

must be in his name; and we could have proved, that no other person had an interest in the freight.

*Per Curiam.* There were several objections raised upon the argument against the right of recovery in this case. It will be sufficient to notice only the first objection, that the plaintiff has not shown an insurable interest.

The policy was generally " upon the freight of goods laden on board the brig *Delia*," and the plaintiff was not owner of the vessel, he having, some time before the insurance was effected or the voyage begun, sold her to *Howell*, who caused the vessel to be insured for the voyage. *Howell* states that he had nothing to do with the freight for this voyage, as the plaintiff, according to an agreement made at the time of the sale, was to have the benefit of that freight. All the interest of the plaintiff was, then, founded upon this special agreement, and it could not strictly or technically be denominated freight, since it was not an interest accruing to the plaintiff, as owner of the vessel for the use of her. It was an interest founded entirely upon the agreement, and could not have been claimed or recovered under any other title. It could not be insured as freight, *eo nomine*, unless accompanied with a disclosure of the peculiar nature of the interest. It would otherwise be an imposition upon the insurer, who when he is asked to insure freight must presume that he is dealing with the owner of the vessel. The owner has a stronger interest in the equipment and management of the vessel than a stranger, having no such stake in the voyage. And to allow such an interest to be covered under the name of freight, without explanation, would lead to abuse and fraud, by affording an opportunity to cumulative insurances upon the same interest, and interested combinations to destroy it. In *Cheriot* v. *Barker* (2 *Johns. Rep.* 346.) the court intimate

and approve of this principle, that a concealed particular interest, contrary to usage, ought to be disclosed. This case is brought fully within the reach of that doctrine. The contract ought to contain, within itself, the identity and certainty of the subject matter, so that the parties may understand the engagement with precision, and calculate accordingly.

Judgment ought, therefore, to be rendered for the defendant.