ICARD *against* GOOLD.

IN ERROR, on *certiorari,* from the justice's court of the city of *New-York.* *Goold* sued *Icard* in the court below for seaman's wages.

It appeared, by the return, that on the 23d of *November,* 1807, *Goold* shipped as a seaman on board the ship *Cados,* of which *Icard* was owner, and *Obed Buncker* master, on a voyage from *New-York* to *Marseilles,* and back to *New-York,* at 18 dollars per month, and received one month's pay in advance. On the 28th of *November,* 1807, the ship proceeded on her voyage, and while pursuing it, she was spoken, in the *Gut* of *Gibraltar,* by a gun-boat under *English* colours, which, from the evidence, was probably a *Spanish* vessel. Afterwards, just off the harbour of *Marseilles,* she was again spoken by an *English* frigate, who examined her papers, and permitted her to proceed. Very shortly after she was captured by a *French* armed vessel, while entering the harbour of *Marseilles,* and carried into that port, where she arrived on the 7th of *February,* 1808, and was put under sequestration. Two *Frenchmen,* with the crew of the ship, remained on board of her, living on the provisions of the ship, until the 13th of *August,* 1808, when the crew, including the plaintiff below, were taken from the *Cados* by a *French* government-boat, and carried on board a *French* frigate in that harbour, where they were kept on half allowance of provisions for several days, and then permitted to go on shore. Previous to their being taken out of the *Cados,* her cargo was discharged, under the direction of the custom-house officers at *Marseilles,* and put into the public store-house at that place. The crew of the *Cados* assisted in discharging the cargo, which was landed in the month of *June,* 1808. Captain *Buncker* gave directions to the crew to be particular in taking care of the cargo at the time of its being unloaded, and superintended the same.

On the 6th of *June,* 1808, the *Cados* and her cargo were condemned as lawful prize by the imperial court of prizes at *Paris,* under the imperial decree of the 17th of *December,* 1807, on the ground that " she could no more reclaim the privilege of

*If freight is totally lost by disaster, peril, or force, without fraud or misconduct of the master or owners, the seamen lose their wages. Insurance of freight is for the indemnity of the owners only, and does not enure to the benefit of the seamen's wages, which cannot be insured directly, nor indirectly.*

NEWYORK,
August, 1814.

ICARD
v.
GOOLD.

her flag, which she had permitted to be violated by the visit of an *English* man of war," as appeared by the decree of condemnation, which was registered on the 1st of *August*, 1808.

The cargo was insured, and after notice of the capture and abandonment by the assured, a compromise took place, on which the underwriters paid one third of the loss, and relinquished their claim to the cargo which had been abandoned.

The ship and freight were not insured, and have been lost to the owners.

The jury allowed wages until the cargo was unladed; and judgment for the plaintiff was rendered on the verdict below for 123 dollars.

PLATT, J. delivered the opinion of the court. (After mentioning the facts in the case, as above stated.) These facts, in regard to the insurance, are mentioned because they were relied on at the trial below, not because they are deemed essential in the case; for the law is well settled that insurance on *freight* is for the indemnity of the owners *only*, and does not enure to the benefit of *seamen's wages*, which cannot be insured, either directly or indirectly. (*M'Quirk and others* v. *Ship Penelope*, 2 *Peters' Adm. Decisions*, 276.)

The maxim that *freight is the mother of wages*, contains the rule which governs this case.

This maxim implies that if the freight be totally lost, by disaster, peril, or force, without fraud or misconduct of the master or owners, the seamen lose their wages. This has been adopted as a rule of policy to secure the fidelity, and stimulate the exertions of the crew, and all seamen are presumed to know this rule, and to contract with reference to it.*

* See *Abbot on Ships, &c.* part 4. c. 3. s. 1.

Here was no fraud or improper conduct in the master or owners. It was a lawful trade, and the voyage was directly pursued, in good faith; but the vessel and cargo were captured and condemned under a *French* decree of the 17th of *December*, 1807, made while the ship was on her passage, and of which the master was entirely ignorant.

No freight was earned, and like the case of total loss by piracy, the seamen and owners must be deemed common sufferers. Wages cannot be exacted by the unfortunate seamen from the still more unfortunate owners.

The judgment below ought to be reversed.

                                           Judgment reversed.