OGDEN <i>against</i> ORR.

IN error, on *certiorari* from the justices' court of the city of *New-York*. *Orr* brought an action of *assumpsit* against *Ogden*, in the court below, for *wages* as a seaman, and also for a breach of the shipping articles, on a voyage from *New-Orleans* to *Lisbon*, and back to a port in the *United States*. The plaintiff shipped on board the *Paragon*, at *New-Orleans*, on the 30th of *April*, 1813, at 35 dollars per month. One of the seamen, a witness, testified, that on the outward voyage the crew were put on a *short allowance* of provisions, which continued until their arrival and while they remained at *Lisbon*, where the wages of seamen were from twelve to eighteen dollars per month. The crew, being called up at three o'clock in the morning, without occasion, conceived themselves treated ill, there being no duty to be performed until sunrise. They complained to the captain and mate; and being called up as before, they, after some time, complained again to the captain, and de-

No action can be maintained by a seaman, discharged by his own consent, in a foreign country, under the act of congress, (7th cong. 2d sess. c. 62. s. 3.) against the owner of the vessel, to recover two-thirds of the three months' wages, directed by that act to be paid by the master of the vessel to the *American* consul, over and above the wages due to such seaman, at the time of such discharge.

ALBANY,
Jan. 1815.

OGDEN
v.
ORR.

sired him to pay their wages, and discharge them. The captain replied, "You know I cannot discharge you, but I will give you your wages, and you may go to h——l." The captain then paid off the whole crew, who went ashore. A few days after, a new crew was shipped, at 12 dollars per month. Orr was sent home by the *American* consul, as a destitute seaman. He was discharged the 8th of *July*, 1813, and arrived at *Newport* on the 4th of *September*. On his cross-examination, the witness said, that a few days after the crew were discharged, the captain met him, (the witness,) and attempted to arrest him, but he escaped.

The captain, who was admitted as a witness, by consent, testified, that the crew were not put on short allowance, but that the provisions were distributed to them daily, in the manner usual on board of merchant vessels. The crew complained only of the mate, and said they would not return in the vessel with him. He denied that he discharged the crew, but paid them off, at their request, at 35 dollars, and hired a new crew, at 12 dollars per month. After being some time on shore, the crew applied to the consul for assistance, who told them they were too late, as the captain had taken away all his papers. It appeared, that, at *Lisbon*, vessels were usually unloaded by lighters, which ply at certain hours, and, frequently, at night. The *log-book* was offered in evidence, and the handwriting of the mate, who was out of the state, was offered to be proved, in order to show the desertion of the plaintiff; but the court below rejected the evidence; and being of opinion that the plaintiff had not deserted, but had been discharged by the captain, gave judgment for the plaintiff for 70 dollars, being two months' wages, to which, the court were of opinion, he was entitled, under the "Act supplementary to the act concerning consuls and vice-consuls, and for the further protection of *American* seamen," passed *February* 28, 1803. (7th cong. 2d sess. c. 62.)

PER CURIAM. The court below have founded their opinion of the plaintiff's right to recover, altogether upon the act of congress; (2d sess. 7th con. c. 62. § 3;) and if the action is at all to be sustained, it must be under that statute; for the facts in the case lead irresistibly to the conclusion, that the plaintiff below left the vessel voluntarily, and with the consent of the

master. He received his wages up to the time of his discharge, and the evidence will not fairly warrant the inference that he was driven away by harsh and cruel treatment. Although the great disparity between the wages of the plaintiff and those given to the new crew, affords pretty good reason to conclude that the master was very willing to part with his old crew; yet the conclusion drawn from the facts in this part of the case, by the court below, against the plaintiff's claim, ought not to be disturbed.

But we think the court below have erred in the construction given to the act of congress. This act provides, that when a seaman or mariner, being a citizen of the *United States*, shall, with his own consent, be discharged in a foreign country, it shall be the duty of the master to exhibit to the consul, or certain other officers, the list of his ship's company, and to pay to the officer, for every seaman or mariner so discharged, three months' pay, over and above his wages then due; two thirds of which is to be paid by the consul to the seaman discharged, and the other third to be retained by him, for the purpose of creating a fund for the benefit of destitute *American* seamen, and for which sum the consul is to account with the treasury of the *United States*. Assuming that the plaintiff below was discharged with his own consent, the question is, whether he can maintain an action for the two thirds of the three months' wages required in such cases to be paid by the master. The act directs it to be paid to the consul; it creates no obligation on the master to pay it to the seaman; and the policy of the law seems to have been, that the money should pass through the hands of the consul, who is made, in some measure, the guardian of *American* seamen in foreign parts, for the purpose of protecting their rights and relieving their wants. This three months' pay was intended as a kind of penalty upon masters of vessels, to prevent their discharging *American* seamen in foreign countries; and to allow the seaman to call upon and receive from the master his proportion of the penalty, would not only be against the policy of the act, but would be depriving the fund, intended to be created for the benevolent purpose of relieving distressed seamen, of its share. It is, likewise, taking from the consul the commissions to which, by the act, he is entitled. Besides,

this is a suit against the owner, and not against the master of the vessel. In whatever point of light, therefore, it is viewed, the judgment cannot be supported.

Judgment reversed.