HENOP (DAVIDSON v.). See Case No. 3,-605.

———

## Case No. 6,368.

### HENOP v. TUCKER.

[2 Paine, 151.] [1]

Circuit Court, S. D. New York.[2]

WAGES OF SEAMEN — SALE OF VESSEL — DETERMINATION OF CONTRACT—DAMAGE TO VESSEL.

1. The general principle of the marine law is, that freight is the mother of wages, and if no freight be earned, no wages are due. The reason of this rule is, that if mariners were to have their wages in all cases, they would not use their endeavors nor hazard their lives for the safety of the ship. But it does not apply where the freight is lost by the fraud, or wrongful act of the master.

2. Without any express stipulation to that effect, the seamen's contract is contingent, and in cases of wreck and capture their wages are lost on the happening of the peril; and this does not depend on the physical destruction or absolute loss of the vessel, for she may afterwards be got off, or be recaptured or restored.

3. And in respect of the right to wages, there is no distinction between a vessel's becoming innavigable from wreck, and being rendered incapable of proceeding on her voyage from any other peril of the sea.

4. And where in the course of a voyage a vessel receives damage by the perils of the sea, to an extent that it will cost more than one-half her value to repair her, and upon a regular survey and proceedings she is sold and abandoned to the underwriters, the contract with the seamen for wages is determined.

5. Where an American seaman shipped at New York, on a voyage to Liverpool, and back to the United States, and on her return voyage the vessel, in consequence of a leak, put into Cork to repair, where upon a regular survey it was found that it would cost five-sixths of her value to repair her, and the surveyors advised a sale, and she was accordingly sold and abandoned to the underwriters; it was *held*, that the seaman was not entitled to recover the two months' wages allowed by the act of congress to American seamen discharged abroad. Aliter, had she been unseaworthy at the commencement of the voyage.

[Cited in Kelly v. Otis, 23 Fed. 905.]
[See note at end of case.]

———

[1] [Reported by Elijah Paine, Jr., Esq.]

[2] [Date not given. 2 Paine includes cases from 1827 to 1840.]

[Appeal from the district court of the United States for the Southern district of New York.]

In admiralty.

E. Hine, for appellant.
E. Burr and Mr. Benedict, for respondent.

THOMPSON, Circuit Justice. In this case, Tucker and Carver, seamen on board the brig Caroline, filed a libel against Henop, as owner of the brig, for the recovery of two months' wages claimed to be due on their discharge from the brig at Cork, under the act of congress of 1803, § 3,—3 Laws [Bior. & D.] 527 [2 Stat. 203]. The two months' wages were allowed by the district court, to wit: sixty dollars to Tucker, and forty dollars to Carver, from which decree there is an appeal. The appeal, however, is only prosecuted against Tucker; as to Carver the decree has been satisfied.[3] From the libel and proof in the case, it appears that Tucker was duly shipped as mate or mariner on board the brig, on a voyage from New York to Liverpool, and back to some port in the United States. That the brig sailed on the voyage with a cargo for Liverpool, and having landed the same, took in a return cargo of salt; and soon after having sailed on her return voyage, the brig was found to leak so much, that it was deemed necessary to put into some port to repair, and she accordingly bore away for the harbor of Cork; and upon her arrival there, a survey was held, and the surveyors upon examination reported her damages to an extent that would cost about five thousand dollars to repair her. The brig being valued at about six thousand dollars, the surveyors advised a sale of the brig, which was accordingly made, and the vessel was abandoned to the underwriters. A protest was duly made, and signed by the master (Jenkins) and by both the libellants, fully stating the vessel to have been seaworthy at the commencement of the voyage, and that the damage sustained was by perils of the sea. The proceedings on the survey and sale were regular, and no complaint on the appeal has been made on that ground. Upon the hearing in the court below, some testimony was introduced touching the seaworthiness of the brig, but utterly failed in showing that she was unseaworthy; and the only point that has been made on the appeal is, whether, under these circumstances, Tucker was entitled to his two months' wages under the act of congress.

The question in this case resolves itself into the single inquiry, whether when in the course of a voyage a vessel receives damages by perils of the sea, to an extent that it will cost more than one-half her value to repair her, and upon a regular survey and proceedings she is sold and abandoned to the underwriters, the contract with the seamen for wages is determined. There is no question

[3] [See note at end of case.]

in this case with respect to any wages except the two months' claimed under the act of congress. That act—Act 1803, § 3; 3 Laws [Bior. & D.] 527 [2 Stat. 203]—provides that whenever a ship or vessel belonging to a citizen of the United States shall be sold in a foreign country, and her company discharged, it shall be the duty of the master or commander to furnish the consul, vice-consul, commercial agent, or vice-commercial agent, a list of the ship's company, and to pay to such public agent, for every American seaman or mariner designated upon such list, three months' pay over and above the wages that may be then due to such seaman or mariner, two-thirds of which is to be paid by such public agent to each seaman or mariner, and the other third to be applied in the manner directed by the act, in the maintenance of destitute seamen, and to aid them in their return to the United States.

It has been argued at the bar, on the part of the appellants, that this law applies only to cases where there has been a voluntary sale of the vessel in a foreign country, and not where the sale has become necessary by reason of sea damage. I am not aware of any direct decision upon this point, either in the English or American courts. No case has been referred to on the argument where it has been expressly adjudged. The question must, therefore, be decided upon general principles, growing out of the contract of seamen for wages. It is admitted to be the settled rule, that in case of shipwreck, when there is a total physical destruction of the vessel, this will dissolve the contract for wages; but it is said, that when there is only a technical total loss, the contract is not ipso facto dissolved. I am not aware of any case where such a distinction has been intimated; and I cannot discover any solid grounds upon which it can be maintained. It is true, the ship-owner is not obliged to abandon, he may repair the vessel and prosecute the voyage. But it may not be in his power to make such repairs in a foreign country; or the damage may have occurred in a place where repairs were impracticable; or the extent of the injury so great as to render the vessel not worth repairing. And the loss of wages grows out of the loss of freight, and the breaking up of the voyage, so that no further beneficial services can be rendered by the seamen; and in case of shipwreck or capture, the assured is not bound to abandon, any more than in any other case of loss which entitles him to abandon.

This case is not free from difficulty, and I cannot say that I have arrived at a perfectly satisfactory conclusion upon it. The first impression would be that it was unjust to visit the misfortune of the ship-owner upon the seamen, when they have discharged their duty faithfully. The law is very benign in its provisions respecting this improvident class of men, and goes very far in throwing around them guards to protect

and secure their rights, and to prevent their being deprived of their wages by any circumstances growing out of the misconduct of the master or owners. The master is not, therefore, permitted voluntarily to discharge the seamen in a foreign country; and their wages continue until the end of the voyage, where they are wrongfully discharged by the master; and courts will look with a vigilant eye to see that no trivial or slight circumstance shall excuse the master for such discharge. But where the voyage is broken up without any fault of the master or owners, by perils of the sea or a vis major, against which they could not guard, and by reason whereof no further beneficial service could be rendered by the seamen in navigating the vessel, no injustice is done the seamen in such case, if, according to the principles of the marine law, this is understood to be a contingency upon the happening of which the contract for wages is dissolved, according to the true intent and understanding of the parties. It certainly cannot be maintained that a seaman is, in all cases, entitled to receive his full wages, when the voyage is broken up without any fault or misconduct chargeable upon him. Where there is no special contract, the seamen must be understood to be on board on the common terms of the marine law. It is admitted, that in case of wreck, the seamen lose their wages; and where is the sound and sensible distinction between such a case and when there is a total loss by any other peril of the sea? There is not, in every case of wreck, a total physical destruction of the vessel; and if there is an insurance covering the loss, the remedy of the ship owner against the underwriters is the same in both cases. The case of shipwreck which draws after it the loss of seamen's wages, is not limited in any of the cases to a physical destruction of the vessel. If a ship takes ground by accident or by force of the wind or sea, out of the ordinary course of navigation, and remains so long as to become innavigable, it is a wreck, and constitutes a total loss; and what can make the difference, whether the vessel becomes innavigable by reason of grounding or any other peril of the sea, if she is thereby rendered incapable of prosecuting the voyage? If there must be an absolute physical destruction of the vessel, in order to deprive the seamen of their wages, they must wait until it is known whether the vessel goes to pieces or is got off. It is also well settled, that in case of capture, the seamen lose their wages; and this must depend on some other principle than the physical destruction or absolute loss of the vessel. That remains in perfect safety, and may be recaptured or restored; or indemnity for the loss may be obtained from the underwriters, if any insurance has been effected. The ground upon which these cases rest, must grow out of the nature of the seamen's contract, and depending on some principles of public policy, from the nature of the service. In the cases of wreck and capture, the seamen's contract, without any express stipulation to that effect, is considered contingent, and their wages lost on the happening of the peril. The law annexes or implies a condition that where the voyage is broken up by some peril or vis major, without the fault of the master, or ship-owner, or any of the parties concerned in the navigation of the vessel, the seamen's wages are gone. This doctrine grows out of principles of public policy, to stimulate seamen to every possible exertion to save the vessel, knowing that their wages were dependent upon that; and it is upon this same principle that seamen are not allowed to insure their wages, which is a rule so firmly fixed and incorporated in the law, that, according to the language of some of the cases, it cannot be done directly nor indirectly. But if the seamen have a right to recover their wages, at all events, of the ship-owner, it is difficult to see why they may not insure their wages; but if they can recover their wages of the ship-owner, they are not all put at hazard, and the recourse over against the ship-owners, in all cases, is virtually an indirect insurance of their wages, and is directly at war with the grounds and reasons upon which that rule has been established. The general principle of the marine law is, that freight is the mother of wages; and if no freight be earned, no wages are due. There may be some exceptions to this rule, depending on special circumstances, but not applicable to the present case. This principle protects the ship-owner, by making the right of the mariner to his wages commensurate with the right of the owner to his freight; but that the rule may duly apply, the freight must not be lost by the fraud or wrongful act of the master. The policy of the rule applies to cases of loss of freight by perils of the sea; and the reason assigned for the rule is, that if the mariners were to have their wages in all cases, they would not use their endeavors, nor hazard their lives for the safety of the ship. 1 Sid. 179; 3 Kent, Comm. 187. In the case of Wiggins v. Engleton, 3 Burrows, 1844, it was held, that the wages of a sailor are not payable if the ship be lost or taken before the end of the voyage; and no distinction is intimated between an absolute and a technical total loss. In the case of Icard v. Goold, 11 Johns. 279, it was held, by the supreme court of this state, that insurance of freight is for the indemnity of the ship-owner only, and does not enure to the benefit of seamen's wages, which cannot be insured directly or indirectly; and the same principle is recognized in the case of Riley v. Delafield, 7 Johns. 522, where it is held, that no interest is covered by an insurance on freight other than freight strictly so

called; that is, an interest accruing to the insured for the use of the vessel of which he is owner. And in the case of Shepherd v. Taylor, 5 Pet. [30 U. S.] 711, it is said by the court, that there is an intimate connection between the freight and the wages; the right to the one is generally, though not universally, dependent on the other. It would certainly operate oppressively upon the ship-owner, if he should be held liable to pay the seamen's wages, and yet could not indemnify himself by insurance. The marine law very equitably distinguishes between the cases in which seamen's services are not rendered in consequence of a peril of the sea, and where they are not rendered by reason of some illegal act or misconduct of the master or owner interrupting and destroying the voyage. In the latter case, they are entitled to their wages. 3 Kent, Comm. 187. In the case of The Saratoga [Case No. 12,355], Mr. Justice Story fully recognizes the rule, that where freight is lost by inevitable accident, the seamen cannot recover wages as such from the ship-owner; but in some cases, under special circumstances, may be entitled to recover compensation in the nature of salvage. If the doctrine in these cases is well founded, it must rest upon the principle that under the marine law the contract for seamen's wages is, from the nature of the case, in some measure contingent, depending on the earning of freight where no fault is chargeable upon the master or owner. Under these views of the case, I think that no wages were recoverable, and the decree of the district court must accordingly be reversed.

NOTE. A seaman charged with mutinous conduct, was voluntarily discharged from the ship by the captain, who expressed regret for the difficulties that had occurred, and promised to pay the seaman his wages. Held, that the captain's promise operated as a waiver of any forfeiture of wages by the seaman, for disobedience of orders during the voyage. Austin v. Dewey, 1 Hall, 238. The master and seamen, after becoming separated from vessel by shipwreck, are entitled to compensation as laborers or salvers, for their services in transporting and saving the property, to be allowed according to the nature of the services. Bridge v. Niagara Ins. Co., Id. 423. Wages cannot, in general, be recovered by a seaman, where no freight has been earned, and there is no fault of the master or owners occasioning the failure. Van Beuren v. Wilson, 9 Cow. 158. It is not sufficient to entitle seamen to wages, that the freight be lost without their fault. It must be owing to the fraud or other wrongful act, or some fault of the master or owner; or at least some act or omission on the part of the master or owner, over which the seamen can have no possible control. Id. The defendants shipped the plaintiff, a seaman, on a voyage from New York to Newry, in Ireland, and thence back to a port in the United States; and the vessel was libelled in the Irish admiralty by one pretending to be owner, and the crew turned ashore and discharged by the captain. The vessel was detained more than a year, and was finally restored; but, in the meantime, had become so much deteriorated as to be unworthy of repair, and was abandoned in Ireland to the underwriters, and never returned to the United States. Held, that this was not the exercise of that superior force over the vessel, which should exempt the owners from liability to pay the plaintiff his wages, or damages for discharging him from the return voyage; and held, also, that the master and owners were not entirely free from fault; and they were bound to understand and risk their title; or, if it was contested in a mere civil proceeding, to take effectual means for liberating it, if possible, on security, pendente lite; so as to prosecute the voyage, and enable the vessel to earn freight. Id. An action will not lie at a suit of a seaman against the owners under the act of congress [2 Stat. 203]. And see Ogden v. Orr, 12 Johns. 143. Id. If, during a voyage, a seaman is compelled to leave the ship, on account of ill usage and cruel treatment by the master, or through his agency, and for fear of his personal safety, it is not a case of a voluntary desertion, and he is entitled to recover his full wages for the whole voyage. Ward v. Ames, 9 Johns. 138. Where a crew has been shipped for a voyage, and articles have been regularly entered into, fixing the rate of wages, if the crew, at an intermediate port of the voyage, compel the master by threats of desertion, to enter into new articles for a higher rate of wages, such articles are void, and not binding on the master, being contrary to the policy of the act of congress; and if established, would be holding out an inducement to a violation of duty and of contract. Bartlett v. Wyman, 14 Johns. 260. Nor are such new articles binding on the owners of the vessels, the master having no authority to make them, the owner being bound by the first articles. Id. And any such promise is void for want of consideration, the seamen having no right to abandon the voyage. Id. The written agreement or shipping articles, made at the port of departure, are the only legal evidence of the contract, and the mariner can recover no more than what is stipulated in such articles. Id. Johnson v. Dalton, 1 Cow. 543. Where a seaman who had signed shipping articles, by which he engaged not to absent himself from the vessel without leave until the voyage was ended, and the vessel discharged of her cargo, on the vessel's arriving at her last port of discharge, and being there safely moored, refused to remain on board and assist in discharging the cargo, but absented himself, without leave; held, that by such desertion, he had forfeited his wages. Webb v. Duckingfield, 13 Johns. 390. Though the master has no right to insert in the shipping articles any stipulation or agreement repugnant to the laws of the United States, yet he may add any provisions consistent with the laws relative to seamen. Id. The contract with a seaman continues in force until the cargo is finally discharged, and if he leaves the ship before that is done, he forfeits his wages. Id.

Where a ship, captured during the voyage, and her crew taken out and detained as prisoners of war, was afterwards recaptured, and the master having hired a new crew, proceeded on her voyage, and arrived at the last port of delivery, and carried freight; held, that the seamen who were taken out, though never restored to the ship, were entitled to wages for the whole voyage, deducting only their proportion of the salvage paid to the recaptors. Wetmore v. Henshaw, 12 Johns. 324. Where a vessel is captured and condemned, though the owner afterward recovers the freight from the insurers, the seamen are not, therefore, entitled to their wages. Percival v. Hickey, 18 Johns. 257. So, where a neutral vessel is run foul of and sunk by a belligerent cruiser, through negligence, and the owner, in an action of trespass against the commander of the vessel, recovers the full value of the vessel and cargo so sunk and lost, the seamen are not entitled to the wages. Id. Insurance of freight is for the indemnification of the owner only, and does not enure to the benefit of the seamen's wages,

which cannot be insured directly or indirectly. Icard v. Goold, 11 Johns. 279. The master is chargeable for wages only on his special contract, in hiring the seamen; and the owners from the implied contract which they are supposed to make through their agent and master. Wysham v. Rossen, Id. 72. Where seamen are shipped for a voyage, and during the outward passage the vessel is captured and carried into a port of the captor, where the master leaves her, and she is afterward released, and instead of prosecuting the original voyage, returns home with the same crew, under the command of A., who had been subsequently appointed by the owner to take charge of the vessel, this is a new and distinct voyage, and A. is liable only for the wages arising while he was master, and not for wages which had accrued while the vessel was under the former commander. Id. Whether, if A. had prosecuted the original voyage, he would be deemed to have assumed the contract of the seamen with the former master. Id. A seaman signed articles without reading them, for a voyage from New York to Archangel, and back to New York, which was represented to him as different from that expressed in the articles. The vessel went to Sicily, Sardinia and Messina, at which places she disposed of her outward cargo, and at the latter place, where she lay seven months, took in a return cargo. She left Messina for Gottenburgh, and on her voyage thither was captured, carried in and condemned; held, that the seaman was entitled to wages unto and during his stay at Messina; but not from Messina, that being a new intermediate voyage, and the capture put an end to the freight, as well as wages, for that voyage. Murray v. Kellogg, 9 Johns. 227. The seaman, in this case, brought his action in an inferior court, which allowed him wages up to the capture; and, on certiorari, the supreme court refused to reverse the judgment on that account, the excess being trifling, and there was no evidence as to the time between the departure from Messina and the capture, but some evidence of collusion between the master and captors. Id.

Where a vessel was compelled, in consequence of springing a leak, to put back for repairs, and the seamen made no application for repairs under the law of the United States, but the owners voluntarily caused repairs to be made; and the vessel, after the repairs, was, in the opinion of the master carpenter, and three shipbuilders, perfectly seaworthy; though seven journeymen carpenters were of opinion that she was not seaworthy; and on that ground, the crew refused to proceed on the voyage; held, that no freight having been earned, and the loss of the voyage not being imputable to the master or owners, the seamen were not entitled to wages; and that they could not set up the opinion of the journeymen workmen to excuse their breach of contract, and justify their demand of wages. Porter v. Andrews, 9 Johns. 350. Where the voyage is lost by the act of the master or owner, and whether, as 'it seems, that act be wrongful or fraudulent or not, the seamen are entitled to their wages. Hoyt v. Wildfire, 3 Johns. 518; Sullivan v. Morgan, 11 Johns. 66. So, where a seaman was hired for a voyage from New York to Bombay and back, and the vessel was loaded with naval stores; and the master, on his route to Bombay, under a false pretense of want of water, deviated, in order to put into the Isle of France, and was captured by a British vessel on her way thither, and the ship condemned; held, that a seaman might, on his return, recover his wages, according to the contract, from the time he shipped on board until his arrival in New York, deducting such wages as he had received in his absence. Id. Where freight has not been earned, wages are not due. Dunnett v. Tomhagen, 3 Johns. 154; Icard v. Goold, 11 Johns. 279. And it makes no difference that there has been a salvage of part of the cargo; for, as it was not delivered by the ship, no freight was earned. Id. Where the crew, on abandoning a vessel from necessity, took some boxes of merchandise, part of the cargo, in the long boat with them, and which were, in this manner, preserved; held, that though the seamen might have had a valid lien on the goods saved, for an equitable compensation, in the light of salvage, yet it gave them no right of action on their contract for wages. Id. Where the wages of a seaman appear, by the shipping articles, evidence of a further compensation by way of customary privilege, cannot be received. Bogert v. Cauman, Anth. N. P. 97, note a. The master is not bound to pay the seamen until the cargo is discharged. Schieffelin v. Harvey, Id. 76, note a. Upon a breach of contract, seamen are entitled to wages until their return home. Patten's Adm'rs v. Park, Id. 46. Where a vessel on a voyage merely earns passage money, and no regular freight, how far seamen are entitled to their wages. Id. 43.