ADELIA HENNESSEY, Appellant, v. THE MANHATTAN FIRE INSURANCE COMPANY OF NEW YORK, Respondent.

*Policy of insurance — construction of a clause requiring property to remain within prescribed limits — provision against a transfer or change in the title — when it does not apply to a chattel mortgage.*

The defendant issued a policy insuring a tug boat belonging to the plaintiff against loss by fire, "in port and while engaged in towing or other service in the waters of Hudson river, Long Island sound, Atlantic ocean, New York bay and harbor, and waters tributary to either, not to go further east than Montauk Point nor further south than Barnegat." There was no provision in the policy declaring that it should be void or cease to operate as an insurance while the tug was within the limits prescribed by it, because it had at other times passed beyond them in the course of its navigation.

*Held,* that the fact that the tug had gone further east than Montauk Point did not relieve the defendant from liability for a loss occurring after the tug had returned to and while she was within the limits prescribed by the policy.

The policy provided that "if the property be sold or transferred, or any change take place in title or possession, whether by legal process and judicial decree, or voluntary transfer or conveyance," it should be void.

*Held,* that this provision only referred to a complete change or transfer of the title from one person to another, and that the policy was not avoided by the giving of a chattel mortgage upon the property.

Appeal from a judgment, entered on the dismissal of the plaintiff's complaint at the circuit.

*Frank D. Sturges,* for the appellant.

*William Allen Butler,* for the respondent.

DANIELS, J. :

The action was brought upon a policy of insurance issued by the defendant on the 30th of September, 1872, whereby it insured Andrew Hennessey against loss by fire to the amount of $5,000 on the tug boat William A. Hennessey, etc. This policy was renewed by the defendant's certificates, issued for that purpose, in September, 1873, and September, 1874, and during the period included in the last renewal, the insurance, with the consent of the defendant, was assigned to the plaintiff, she having become the owner of the property insured. When the last renewal expired, on the 28th of September, 1875, no further certificate of that nature was issued by the defendant until the fourth of November following. On that day it received payment of the premium and issued a certificate declaring the policy in force for one year from the 28th of September, 1875. By the terms of the insurance, it was agreed that the company should not be liable by virtue of the policy, or any renewal thereof, until the premium therefor should be actually paid. There was, therefore, no insurance by means of this policy upon the property from the 28th of September, 1875, to the 4th of November following. But, as the property itself was not destroyed by fire until the 11th of November, 1875, this circumstance is entitled to no controlling influence in the case.

The policy was only against the risk by fire, and it was declared in it that the defendant insured the tug " in port, and while engaged in towing or other service in the waters of the Hudson river, Long Island sound, Atlantic ocean, New York bay and harbor, and waters tributary to either, not to go further east than Montauk Point nor further south than Barnegat." On the twenty-seventh or twenty-eighth of October, the tug started from New York to go to Portland, and she appears to have passed Montauk Point, going east, on the thirtieth of the month. She returned from Portland and arrived at the city of New York on the seventh of November, but at what particular time she left Portland or passed Montauk Point on her return to the city of New York did not distinctly nor clearly appear in the case. Where she was, whether east or west of the Point, on the 4th of November, 1875, when the policy itself was renewed and continued as an insurance, cannot with any certainty be deduced from the evidence. It cannot surely be said

that the tug was east of the Point on the 4th of November, 1875, when the last certificate of renewal was issued, and for that reason it could not be certainly inferred that she was not literally within the terms and protection of the policy by being west of the Point on that day. The court at the trial, however, concluded that she must have been east of the Point, on account of the time probably required to proceed from there to the city of New York, and that the plaintiff, therefore, was deprived of all right to recover under the terms of the policy. But, as the evidence was presented, whether the tug was east or west of the Point was probably a proper subject for the investigation and decision of the jury, and should have been submitted to them by the judge presiding at the trial.

But it is not necessary to place the determination of this case upon this narrow and somewhat critical inquiry, for the terms of the policy do not require to be so strictly construed as to exclude the plaintiff's right to indemnity for the loss, even though the tug was in fact east of the Point at the time when the last certificate was taken, for there is nothing in it declaring that it should be void or cease to operate as an insurance while the tug was within the limits prescribed by it, because it might at other times transcend these limits in the course of its navigation, as they were mentioned in the policy. Contracts of this nature require to be reasonably construed in favor of the assured, and when language is employed which may be understood in more senses than one, it is to be construed as declaratory of the sense in which the insurer had reason to believe it was understood by the assured. (*Dilleber* v. *Home Ins. Co.*, 69 N. Y., 257, 263.)

It has, therefore, been said that courts will not be astute to find ways to work a forfeiture of a contract of insurance; rather, they will strive to uphold it and will construe conditions and provisions in a policy strongly against an underwriter and will incline to uphold the agreement. (*McMaster* v. *Ins. Co. of North America*, 55 N. Y., 222, 232.)

As the waters in which this tug was at liberty to be navigated, were designated and described by the the terms of the policy, they would naturally create the understanding that while she was within such waters she would be protected by the insurance, and when she was further east, or further south, than the points mentioned,

that the policy would, for the time being, cease to operate. The language made use of was in substance and effect, that while she should be engaged in towing, or other service, in those waters, that she should be protected against the risk of fire by the policy. And no intimation was anywhere given that the insurance so created should absolutely cease because she passed beyond either of the points mentioned, as the restrictions, if she returned again in safety within the prescribed limits. Under the circumstances appearing, the ordinary effect and understanding of the language would be that the insurance created by the policy would merely be suspended, while the prescribed limits were transcended, and that it would still be complete and effectual as an insurance during the year, while the tug was afterwards in port, or engaged in navigating the waters specified in the policy. That is the reasonable import of the clause, and if it had been intended that a departure beyond such waters should produce an absolute forfeiture of the policy, fair dealing required that the assured should have been so informed by some terms, having that effect, inserted in it. But nothing of that character was stated in the policy. And the company consequently should not be relieved from liability for the loss, as long as it happened within the waters included in the policy, and when a proper certificate for its renewal had been issued and still continued in force. A point of a similar nature was considered in *Williams* v. *Insurance Company* (30 Ohio, 317), where it was held that the insured was entitled to recover under a policy conferring permission to navigate the Ohio and Mississippi rivers below Cairo, as the loss occurred upon those waters, although the boat, during the period of the insurance, had passed beyond, in its navigation, the waters so described. A similar decision was made in *Greenleaf* v. *Insurance Company* (37 Mo., 25).

The principle of these cases is directly applicable to the point now under consideration, and as it is entirely consistent with the terms employed in this policy, they must be regarded as not only apposite, but as actually controlling over this case.

It appeared during the trial that a mortgage had been given upon the tug by the plaintiff, although it was not produced, neither was any particular statement made of its terms. And it has been urged in support of the dimissal of the complaint, that this fact pre-

cluded the plaintiff from maintaining any claim for indemnity under the policy.

The clause relied upon for that purpose provided that " if the property be sold or transferred, or any change take place in title or possession, whether by legal process and judicial decree, or voluntary transfer or conveyance," the policy should be void. This clause has been so framed, however, as to create a forfeiture only in the event of the title being changed from one person to another, for there was in fact no change of the possession. The language made use of requires this construction, for it is confined to a sale or transfer of the property, or change in the title by legal process, judicial decree or voluntary transfer or conveyance.

Each of these are apt legal phrases and indicate nothing less than a complete change or transfer in the title to the property. And that they were intended to be so understood is further evident from the clause declaring that " when property has been sold and delivered, or otherwise disposed of, so that all interest or liability on the part of the assured herein named has ceased, the insurance of such property shall immediately terminate," for it is only in the event of such a sale or disposition that this result was declared or contemplated. For that, but for nothing less than that, was the termination of the insurance declared, and a chattel mortgage given upon the tug did not make such a disposition of it, and could not reasonably be included within either of the preceding phrases combined in the formation of the provision declaring the changes in the title which should forfeit the insurance, for it was not a sale or transfer of the property, neither was it a change in the title by legal process, judicial decree, voluntary transfer or conveyance. The mortgagor, notwithstanding the mortgage, still continued for all ordinary purposes the owner of the property, subject to the right of the mortgagee to resort to it only for the purpose of obtaining satisfaction of the mortgage debt. This was the view taken of the effect of such an instrument in *Van Deusen* v. *Charter Oak Insurance Company* (1 Robt., 55). The point was considered also in *Conover* v. *Mutual Insurance Company* (1 Comst., 290), where it was held that a mortgage upon the property was not an alienation by sale or otherwise, and did not therefore defeat the insurance.

The authorities relied upon in support of this point fall very far

short of sustaining it, for in *Edmands* v. *Mutual Safety Insurance Company* (1 Allen, 311) all alienations and alterations in the ownership were included in the restraint, and in *Abbott* v. *Hampden Insurance Company* (30 Me., 414) the title to the property had been in form conveyed, subject only to the condition that the grantee should pay a fixed sum annually to one of the grantors during life. The deed therefore conveyed a complete title, defeasible only by the failure to perform the condition.

*Riley* v. *Delafield* (7 Johns., 522) proceeded upon the absence of an insurable interest, and *Columbian Insurance Company* v. *Lawrence* (2 Pet., 25) in no manner presented the point now under examination. Indeed, no authority has been found which would justify a ruling that the simple mortgage of the tug, possession still continuing as it did in the grantor, would produce a forfeiture of this insurance under the terms made use of for that purpose in the policy.

Knowledge of the existence of this mortgage does not appear to have been a material circumstance for the defendant to have known at the time when this last certificate was issued, for, notwithstanding the existence of the mortgage, the assured did still remain the entire, unconditional and sole owner of the property, and it in no manner increased the risk of the company. As the evidence presented the case, the complaint should not have been dismissed, but the plaintiff should have been permitted to recover for the loss appearing to have been sustained. The judgment should be reversed and a new trial ordered, with costs to abide the event.

Brady, J., concurred.

Present — Brady, P. J., and Daniels, J.

Judgment reversed, new trial ordered, costs to abide event.