ABNER C. MATTOON, RESPONDENT, *v.* GEORGE L. MUN-
ROE AND DAVID H. JUDSON, APPELLANTS.

*Permission from the canal board to construct dry-docks on State lands—may be
revoked at any time—lease—when an actual ouster required to terminate it—to
constitute a defense, an eviction must not have been caused by the collusion of
the lessee.*

August 30, 1865, the board of Canal Commissioners granted to the plaintiff
permission to construct dry-docks on the west side of a lock on the Oswego
canal, and to use certain surplus water for filling them, "reserving the power
to revoke or annul the said permission, either wholly or in part, and to
close such dock permanently or temporarily, for any cause whatever."

The plaintiff, in pursuance of such permission, constructed two dry-docks, at
an expense of from $5,000 to $6,000. Thereafter, and on July 15, 1871,
he leased to the defendants "the two dry-docks, . . . being the same
docks built by A. C. Mattoon, on lands belonging to the State of New York,
for canal purposes," for the term of five years, the lease providing that "in
case the grant or sale to the said Mattoon shall be legally rescinded by
the proper authorities of the State, during the term of this lease, the said
Munroe and Judson shall pay for such time only as they shall occupy said
premises, up to the time they shall be legally dispossessed, and this lease shall
be void, without recourse by either party, after such legal dispossession."

The lease further provided that the said Munroe and Judson "do hereby
release, discharge, and make over to the said A. C. Mattoon, his heirs and
assigns, all right, title, and interest which they now have, or may have, or
at any time claim to have, in or to said premises during the life of this
lease, neither party waiving any rights thereafter."

Subsequently, and on February 18, 1876, the canal board, at the solicitation
and request of the said Munroe and Judson, revoked and annulled the
grant or permit given to Mattoon, and thereafter, and on May 23, 1876,
granted a new permit to them to use and occupy the said docks constructed
by the plaintiff. In an action by the latter to recover the rent falling due
under the lease, for the period between February 15, 1876, and July 15,
1876, the defendants claimed that the lease was terminated by the revoca-
tion of the permit granted to the plaintiff, and that they were thereby
relieved from all further liability for rent thereunder.

*Held,* that the canal board were authorized to revoke and annul the permit
granted to the plaintiff at any time, and that the court could not inquire
into the motives which actuated them in so doing.

That to relieve the defendants from liability under the lease, they must show that they were actually and in good faith dispossessed or evicted from the premises.

That as the evidence failed to show an actual dispossession, and as the revocation of the plaintiff's permit was procured by collusion between the State officers and the defendants, no defense to the action was established.

That the plaintiff was entitled to recover.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

The action was brought to recover rent alleged to be due from the defendants to the plaintiff, upon a lease of two dry-docks. The lease was dated July 15, 1871, and was for the term of five years.

The demised premises were therein described as "the two dry-docks situate on the Oswego canal, in the city and county aforesaid (of Oswego), opposite to and west from the lower lock, being the same docks built by said A. C. Mattoon on lands belonging to the State of New York, for canal purposes, under and by virtue of a grant from the board of canal commissioners of the State of New York to the said Mattoon."

The lease contained the following provisions: "In case the grant or sale to the said Mattoon shall be *legally rescinded* by the proper authorities of the State during the term of this lease, the said Monroe and Judson shall pay for such time only as they shall occupy said premises up to the time they shall be *legally dispossessed*, and this lease shall be void, without recourse by either party, after such *legal dispossession*."

"It is further agreed by and between the said parties to this agreement, their heirs and assigns, that for and in consideration of said rental and as a further consideration, that said Monroe and Judson, for themselves, their heirs and assigns, do hereby release, discharge and make over to the said A. C. Mattoon, his heirs and assigns, all right, title and interest which they now have or may have, or at any time claim to have in or to said premises during the life of this lease, neither party waiving any rights thereafter."

The defendants entered under the lease, and occupied until the 28th day of February, 1876, when they left the premises, paying the rent up to the 1st day of February, 1876.

On the 30th of August, 1865, the plaintiff applied to the board of canal commissioners, for permission to build a dry-dock at the place designated in the lease, " and to use the surplus water for filling the same from the level between locks No. 1 and No. 2."

On the same day, the board, by resolution, granted to the plaintiff the privilege of constructing such dry-dock, with a reservation in these words :

" The canal commissioners reserve the power to revoke and annul this permission, either wholly or in part, to close such dock permanently or temporarily, for any cause whatever, and to cause the persons owning or using the same to replace any portion of the canal banks which may have been removed, and otherwise put the banks and canal in the same condition as if no dock had been made, without expense to the State."

On the 18th day of February, 1876, the board of Canal Commissioners adopted a resolution whereby, after reciting the grant of a permit to the plaintiff to build a dry-dock, as aforesaid, and that it was the opinion of the board that the interests of the State required that said grant be rescinded, it was

" Resolved, that the aforesaid grant or permit to A. C. Mattoon, to construct the aforesaid dry-dock in the city of Oswego, is hereby abrogated, annulled and permanently revoked."

The clerk of the board sent to the defendants by mail a copy of this resolution, which was received by them on the 25th of February, 1876. On the 3d day of March, 1876, the defendants caused a copy of said resolution of February 18th to be served on the plaintiff, with a notice that the same had been adopted by the board, and served upon them, and that they were advised that such action of the Board worked a rescission of the grant by the State to the plaintiff and a dispossession of the defendants, and that they had vacated and abandoned the premises, and claimed that the lease was from thenceforth void.

On the 9th of May, 1876, the defendants applied to the board of canal commissioners, for permission to occupy the dry-dock in question, offering to pay therefor annually the sum of six hundred and five dollars. By a resolution of the board, adopted May 23, 1876, such permission was granted to the defendants upon the

terms offered by them, subject to revocation at any time by the canal commissioners. Under this resolution, the defendants again entered into possession of the premises, and occupied as tenants of the State.

There was evidence tending to show that the defendants induced the State officers to recall the permit given to the plaintiff, with a view of getting the permit at a less rate of rental. The referee found that the plaintiff, who was interested in and the owner of lands adjacent to those upon which the dry-docks stood, expended from $5,000 to $6,000 in constructing the dry-docks upon the lands of the State. Before the permit was recalled the defendants applied to the Canal Commissioners in charge to interfere with and recall it. On December 13, 1875, the defendants wrote to the commissioners, stating that the plaintiff " has a mere license, revokable by the board of Canal Commissioners at any time." On February 7, 1876, Judson, one of the tenants, wrote another letter to the Canal Commissioners, and said: " Did you bring up the matter of our dock? Of course this thing is all in your own hands, and whatever you recommend will be carried out."

Before the resolution of May, 1876, was adopted, the plaintiff, on the 8th of May, 1876, offered to give the State $50 more than any other person for the continuance of the permit to occupy the dry-docks, but the offer was declined.

*Albertus Perry*, for the appellants.

*John C. Churchill*, for the respondent.

Hardin, J. :

It must be assumed that the lands upon which the plaintiff constructed dry-docks belonged to, and were the lands of the State, held for the purposes of the operation of the canals. (See permit to plaintiff, in resolution of August 30, 1865.) Such is the express declaration in the lease of 1871, executed between the parties. That lease declares the dock leased then to be situated upon the lands of the State.

This language is used, viz. : " Being the same docks built by said A. C. Mattoon, on lands belonging to the State of New York for

canal purposes, under and by virtue of a grant from the board of Canal Commissioners of the State of New York to said Mattoon." This stipulation is an admission conclusive upon the parties to this action, being found in the lease between them.

The same admission, in effect, is found in the resolution of August 30, 1865, passed by the board of Canal Commissioners. That resolution gave the plaintiff the privilege of constructing a dry-dock on the west side of lock No. 1, Oswego canal, in the city of Oswego. The resolution provided that the dock should be constructed under the directions of the Canal Commissioner, in charge of an engineer designated by him. That resolution expressly reserved to the Canal Commissioners "the power to revoke and annul the permission, either wholly or in part, to close such dock permanently or temporarily, for any cause whatever;" and it declared that an acceptance of the privilege granted to the plaintiff "shall be deemed a covenant on the part of said Mattoon or his successors for the performance of all conditions herein contained."

Under this language, it is quite clear that the plaintiff cannot question the power of the Canal Commissioners "to revoke and annul the permission" wholly, unless some restraint has been placed upon the Commissioners by statute. The whole policy of the State in respect to the lands and waters of its canals has been to keep the title and use and right of use thereof exclusively in the State.

That policy has been evidenced by the action of the people, the Legislature, the State officers, and the courts. (See Constitution, section 6, of article 7; *Burbank* v. *Fay*, 5 *Lans.*, 397.) Nor do we find anything in the act of 1865, chapter 727, or of 1866, chapter 657, which in terms or in spirit interferes with the right of the commissioners to exercise the power of protecting and occupying the property of the State acquired for the use of the Oswego canal. The statute of 1866, chapter 657, in terms authorizes and requires the commissioners to remove or cause to be removed certain specified obstructions and encroachments thereon, whether in the shape of buildings, fences or other structures, except dry-docks authorized by the Canal Commissioners or manufacturing mills or warehouses doing business upon the canal; "that said

lands may be kept in the possession of the State for the purposes of canal navigation."

It would be difficult to see how a building erected by an express permission upon lands by the party to whom they "belong" could be held to be an " *encroachment*" in the sense in which that term is used in the act of 1866. We conclude, therefore, that the Commissioners, in virtue of the reservation in the resolution or permit of August 30, 1865, had the power to revoke the privilege given to the plaintiff; and secondly, that they were not "required" by the act of 1866 to cause the dry-dock to be removed in order to accomplish the declared object of the act of 1866, to wit: "so that said lands may be kept in the possession of the State for the purposes of canal navigation."

Having reached the conclusion that the board of Canal Commissioners had the power to revoke and annul the permit which was given to the plaintiff, we are not at liberty to inquire into the motives which led them to exercise such power, and to sustain or defeat their action, as we shall conclude, upon speculation or evidence submitted in this case, that such motives were commendable or otherwise. (*Burbank* v. *Fay*, 5 Lans., Op. of JOHNSON, J.; *S. C.,* affirmed, 65 N. Y., 57.)

We must, therefore, consider the case further, upon the assumption that the resolution of the board of Canal Commissioners of February 18, 1876, revoked as between the State and the plaintiff the privilege of constructing dry-docks upon the lands belonging to the State.

The terms of the resolution of February 18, 1876, follow a preamble reciting the grant of the privilege of August, 1865, and also reciting the fact that the plaintiff, under the permit of August 30, 1865, constructed such dry-dock, and that it had been in use to the date of the resolution of February, 1876. That resolution declared that the grant or permit to the plaintiff to "construct the aforesaid dry dock, in the city of Oswego, is hereby abrogated, annulled and permanently revoked." It did not in terms affect the structure, nor in terms declare that it should no longer remain upon the lands belonging to the State. Nor did it require the plaintiff to vacate the lands upon which the dry-dock was constructed.

The referee has found that the plaintiff constructed the dry-dock by an expenditure of $5,000 to $6,000. There is no finding that it interfered with a proper use of the canals, or that it was for the interest of the State that it should be removed; nor does the evidence in the case authorize us to draw such conclusions therefrom. But, on the contrary, the action of the Canal Commissioners in passing a resolution, May 23, 1876, to the effect that the defendants have a permit to use and occupy the dry-dock "formerly occupied by A. C. Mattoon, together with its appurtenances," clearly indicates that the removal of the dry-dock was not needful or desirable. But it is said in behalf of the defendants, that the liability to pay rent, under the lease, to the plaintiff, closed the moment the resolution of February 18, 1876, was adopted, and notice thereof given to the defendants, and they offered to surrender up the possession of the premises.

To properly consider the argument addressed to us in behalf of the defendants in that regard, we must turn to the terms of the lease, in connection with the facts and circumstances already alluded to. We find by the lease between the parties that the defendants became the tenants of the plaintiff, for the term of five years, from the 15th day of July, 1871, and that they agreed to hire and pay for "the two dry-docks situate on the Oswego canal, in the city and county aforesaid, opposite to and next from the lower dock, being the same docks built by said A. C. Mattoon, on lands belonging to the State of New York, for canal purposes."

This language, doubtless, carried all the right to the use of the lands which the plaintiff had derived from the State; and it also carried the right to the use of the dry-docks, which had cost the plaintiff some $6,000 to construct, and in which, it must be assumed, he had a beneficial interest, notwithstanding the revocation of the permit to construct them upon the lands belonging to the State.

It was also stipulated in the lease between the parties that "all right, title, and interest which" they had at the date of the lease, "or may have, or at any time claim to have, in or to said premises during the life of this lease," were assigned to the plaintiff. Confessedly this language is sufficiently broad, to carry to the plaintiff any interest or title which the defendants held or acquired in

and to the premises to the plaintiff, during the "life of this lease." Presumably the "life of the lease" was commensurate with the term of five years named therein—to wit: from July 15, 1871, to July 15, 1876, in the absence of any other controlling provisions of the lease.

We turn now to see if any event had happened, which, by the terms of the lease, made an entire determination of "the life of the lease." It was stipulated in it, that, "in case this grant or sale to the said Mattoon (referring to the permit from the State) shall be legally rescinded by the proper authorities of the State during the terms of this lease, the said Munroe and Judson *shall pay* for such time only as they occupy *said premises up to the time* they shall be legally *dispossessed*, and this lease shall be void without recourse to either party, *after such legal dispossession*." Here we find an express covenant to pay rent "up to the time they shall be *legally dispossessed*."

Secondly, it is declared "the lease *shall be void* without recourse to either party *after* such "*legal dispossession*."

We are inclined to think that the words used in the former clause quoted, in respect to the assignment of any title or interest acquired in said lands during the "life of the lease," must be held to carry to the plaintiff all rights acquired by the defendants, until, and up to the period of time *when* it may be said the defendants were "*legally dispossessed*," and that the lease was not "*void*" until such "*legal dispossession*."

The important inquiry then comes to us, and we must determine whether the evidence discloses that the defendants were "*legally dispossessed*" or had such *legal dispossession taken place*. The definition given of the word "dispossessed" by Mr. Webster, in his Unabridged Dictionary, is, viz. : "*deprived of possession or occupancy*," and the same author defines "*dispossession*," viz. : "*the act of putting* out of *possession*."

In the case presented by the evidence or finding of the learned referee, we find no act ousting or turning out of possession the defendants, or turning them out of the *occupancy* of the premises— nor of the dry-docks themselves, which may be said to be part of the thing or subject-matter of the demise.

Under all the circumstances disclosed as surrounding the parties at the time the lease was entered into, 15th of July, 1871, we think it just and proper to assume that they contemplated, by the language used, that the rent should cease when and only when there was an actual ouster, an enforced deprivation of the occupancy, the actual possession of the premises, as well as the dry-docks. Besides, the use of the word *legally* seems in its connection to carry the idea that the parties stipulated for an event which should be accompanied with legal proceedings, or such legal proceedings as are resorted to, to obtain legal possession of demised *premises.*

But, if we were to assume that the language employed by the parties in respect to paying rent, until "legally dispossessed," is to be construed as contemplating a cessation of rent, when an eviction took place, we could not, in the absence of a finding of fact that in *good faith* the defendants yielded to a paramount title (inasmuch as the case shows the contrary), and that there was a "substantial and effectual deprivation of the beneficial enjoyment of the subjects of the demise, hold that the defendants were relieved from their covenant to pay rent. (*Moffat* v. *Strong*, 9 Bosw., 57 ; *Lounsbery* v. *Snyder*, 31 N. Y., 516 ; *Cowdry* v. *Coit*, 44 Id., 386.)

The burden was upon the defendants to show that they acted in good faith, and without collusion with the State officers. (*Morse* v. *Goddard*, 13 Met., 177; *Moffat* v. *Strong*, 9 How., 64.) There was no act on the part of the plaintiff contributing to work a dispossession or an eviction, and the case is not brought within the principle laid down in *Dyett* v. *Pendleton* (8 Cowen, 728), and approved in *Edgerton* v. *Page* (20 N. Y., 283). In the case of the *Home Life Ins. Co.* v. *Sherman* (46 N. Y., 370), there was a surrender after a recovery of judgment, and that case is therefore distinguishable from the one before us.

Here the tenants *induced* the action of the State officers, and co-operated with them in the scheme to revoke the permit to the plaintiff, and to re-permit the defendants as to the premises, apparently with a view to escape payment for the use of the structures placed thereon by the plaintiff at a large expense, and which the defendants had stipulated to take and have the use and occupation of until an actual legal dispossession, and under a peculiar lease, with

provisions, we must assume, especially adjusted to the exceptional circumstances surrounding the thing, demised; and they ought to be held to the terms of their lease until the happening of the exact events which were to render it void.

We do not think they established that such events had transpired without any bad faith on their part. In a sense they were the agents of the plaintiff, and it is not too much to require of them entire good faith before relieving them of the exact and full terms of their sealed lease, given to the plaintiff for the payment of rent of the dry-docks upon lands of the State.

If the views already expressed are approved and correct, we are of the opinion that no error was committed by the learned referee upon the trial, calling for an interference with his report, and the judgment entered thereon, and the judgment should be affirmed.

TALCOTT, P. J., concurred; SMITH, J., not sitting.

Judgment affirmed.